STATE OF NORTH CAROLINA v. WALTER JACKSON, JR.

No. 47

(Filed 12 December 1973)

1. Jury § 6— examination of prospective jurors — question not relating to qualifications·

The trial court did not err in refusing to allow defense counsel to ask prospective jurors whether they would adopt an interpretation of·the evidence which points to innocence and reject that of guilt if they found that the evidence is susceptible of two reasonable interpretations, since the question could not reasonably be expected to result in an answer bearing upon a juror's qualifications but could

well tend to commit, influence or ask the jury for a decision in advance of hearing all the evidence.

**2. Criminal Law § 67— voice identification**

Unless barred by constitutional grounds, identification by voice is admissible.

**3. Criminal Law § 67— voice identification — necessity for voir dire**

When voice identification testimony is offered and defendant objects and requests a *voir dire* hearing, the trial judge should hear evidence, from both the State and the defendant, make findings of fact, and thereupon rule on the admissibility of the evidence.

**4. Criminal Law § 67— voice identification — due process — totality of circumstances**

Whether an accused's constitutional right of due process has been violated by voice identification procedures depends upon the totality of the circumstances surrounding the confrontation.

**5. Criminal Law § 67— voice identification admitted — entire record shows unnecessarily suggestive procedures**

When voice identification testimony is properly admitted, but it is later conclusively or plainly demonstrated by the entire record that the identification testimony was based on procedures which were unnecessarily suggestive and conducive to irreparable mistaken identification, the entry of judgment without excluding the voice identification testimony deprives defendant of due process.

**6. Criminal Law § 67— admissibility of voice identification**

Rape victim's identification of defendant by voice when she overheard a conversation between defendant and his attorney after the preliminary hearing in district court did not occur under circumstances unnecessarily suggestive and conducive to irreparable mistaken identification, and the victim was properly allowed to testify at trial concerning such voice identification, notwithstanding the victim testified that prior to the preliminary hearing the police had shown her a photograph of defendant, told her his fingerprint matched one found in her apartment and informed her that defendant had been arrested, where the victim did not identify defendant by sight at the time the photograph was shown to her or at any time thereafter, and she described in detail the particular and peculiar characteristic of defendant's voice upon which she based her identification.

**7. Criminal Law §§ 34, 60— admission of fingerprint identification card**

In a burglary and rape prosecution, defendant was not prejudiced by the admission of a fingerprint identification card made in 1962 where the card, as altered prior to its introduction into evidence, did not disclose defendant's criminal record, and the only evidence relating the card to another criminal offense was the testimony of a police officer that it was police department procedure to place fingerprint information on such identification cards when a person is arrested.

8. **Criminal Law § 60— fingerprint identification card — hearsay — rights of confrontation and cross-examination — harmless error**

If the admission of a fingerprint identification card made in 1962 was erroneous on grounds that it was hearsay or deprived defendant of his rights of confrontation or cross-examination, any prejudice to defendant was dispelled by the fact the State introduced fingerprints taken upon defendant's arrest in 1972 for the crimes for which he was on trial.

9. **Criminal Law § 84— fingerprint identification card — alleged product of illegal arrest — necessity for voir dire on legality of arrest**

The trial judge was not required to conduct a *voir dire* examination concerning the legality of defendant's arrest in 1962 upon defendant's general objection to the admission of a fingerprint identification card made in 1962 where the court conducted a *voir dire* hearing to determine the admissibility of the card and defendant's counsel did not offer evidence, contend or intimate during the hearing that the card was the product of an illegal arrest or detention.

10. **Burglary and Unlawful Breakings § 5; Rape § 5— burglary and rape — fingerprint evidence — voice identification**

The State's evidence was sufficient for the jury in a prosecution for burglary and rape where it tended to show that someone entered the victim's apartment at 2:30 a.m. through a kitchen window and had sexual intercourse with the victim against her will, defendant's fingerprint was found on the lower sash of the kitchen window, and the victim identified defendant as her assailant by his voice.

APPEAL by defendant from *Rouse, J.,* at 26 February 1973 Criminal Session of NEW HANOVER Superior Court.

Defendant was charged in separate indictments with burglary and rape. By consent, the cases were consolidated for trial.

The State offered evidence tending to show that on 17 May 1972, Miss Margaret Rose Simpkins was living alone in an upstairs apartment at 9 North Seventh Street, Wilmington, North Carolina. Her former roommate had moved out during the preceding weekend. The upstairs apartment was a four-room apartment consisting of two bedrooms, a combination kitchen and dining area and a living room. There were two entrances to the apartment, one by way of an inside stairway from the front door of the building, and the other by way of an outside stairway at the back door. Upon entering the back door, a person would pass through the kitchen into the living room and then to the bedrooms located on the front of the building.

State v. Jackson

On the morning of 17 May 1972, Miss Simpkins retired about 1:00 a.m. after locking both doors and closing the window in the kitchen. She was awakened about 2:30 a.m. by a movement of her bed, and thereupon discovered a naked black man on her bed who said to her: "Be quiet; don't scream." He then put his hand over her mouth, held a pair of sharp shears to her neck, and asked her two times if she had any money. Thereafter, by force and by threat of injuring her with the shears, he had sexual intercourse with Miss Simpkins against her will. Before he left, he uttered the words, "No, no, don't call the police." Miss Simpkins immediately called the police. Upon their arrival, she related the details of the assault, and was taken to a hospital for examination. The examination revealed that she had engaged in sexual intercourse within 36 hours. There was a small scratch on her neck.

When the police arrived, the window in the kitchen was open. This window did not have a lock, and Miss Simpkins stated that she had not disturbed the window since she closed it upon retiring. The police found a latent fingerprint on the lower portion of this window sash. The latent fingerprint was photographed, lifted and placed on a 4″ by 5″ card. It was then placed in a special fingerprint file of the Wilmington Police Department. At trial, the latent fingerprint taken from the window sash was offered into evidence as State's Exhibit No. 13. A fingerprint impression taken from defendant Walter Jackson, Jr. on 25 October 1962 was also offered into evidence as State's Exhibit No. 14. Lieutenant David Turner, found by the court to be an expert in fingerprint identification, testified that in his opinion the fingerprint impression on State's Exhibits 13 and 14 were made by the same finger. He subsequently testified that the fingerprint on Exhibit 14 was identical to the print taken from defendant on 28 September 1972.

The prosecuting witness testified that she had never seen her assailant before the morning of 17 May 1972, and that she could not identify defendant as her assailant by sight. However, she positively identified defendant as her assailant by the sound of his voice.

Testimony concerning the fingerprints and the voice identification will be more fully considered hereinafter.

Defendant offered no evidence. The jury returned verdicts of guilty of rape, and non-felonious breaking and entering. The

trial judge imposed a sentence of life imprisonment in the rape case and a sentence of two years upon the verdict of non-felonious breaking and entering, the sentences to run concurrently. Defendant appealed, and we allowed motion to bypass as to the non-felonious breaking and entering charge on 19 July 1973.

*Attorney General Robert Morgan and Assistant Attorney General William F. Briley for the State.*

*Goldberg and Anderson by Aaron Goldberg for defendant appellant.*

BRANCH, Justice.

[1] During selection of the jury, defendant's counsel posed to the prospective jurors the following question:

"MR. GOLDBERG: I ask you now collectively if you find from the evidence relating to any or all the facts in this case, in view of all the evidence, that it is susceptible of two reasonable interpretations; that is, one leading to his innocence and one leading to his guilt, I will ask you now if you will adopt that interpretation which points to innocence and reject that of guilt?"

The court sustained the State's objection to this question, and defendant contends that this ruling resulted in prejudicial error.

The *voir dire* examination of jurors has a double purpose, (1) to ascertain whether grounds for challenge for cause exist and (2) to enable counsel to exercise intelligently the peremptory challenges allowed by law. *State v. Allred,* 275 N.C. 554, 169 S.E. 2d 833. However, counsel's examination into the fitness of jurors is subject to the trial judge's close supervision. The regulation of the manner and extent of the inquiry rests largely in the trial judge's discretion. *State v. Bryant,* 282 N.C. 92, 191 S.E. 2d 745 and *Karpf v. Adams* and *Runyon v. Adams,* 237 N.C. 106, 74 S.E. 2d 325.

In *Baker v. Harris,* 60 N.C. 271, this Court disapproved of the practice of asking jurors whether their minds were in such a state that they might try a case fairly and impartially. There the Court stated: "Answers to such questions, in the great majority of cases, will not be likely to afford reliable information as to the true state of a juror's feelings."

In *State v. Bryant, supra,* this Court held that the trial judge did not commit error by refusing to allow defendant's counsel to ask the following question: "If you heard the evidence as presented here in this case and you thought that Delmos was probably guilty, and if you were not convinced absolutely that he was not guilty and you just thought he was probably guilty, will you be able to return a verdict of not guilty?"

In *State v. Washington,* 283 N.C. 175, 195 S.E. 2d 534, the Court held that the trial judge correctly refused to allow counsel for the defendant to ask the following question: "Would you consider, if you had the opportunity, evidence about this defendant, either good or bad, other than that arising from the incident here?" There, Chief Justice Bobbitt, speaking for the Court, said "Without knowledge of the nature of the evidence referred to in the question, and without knowledge of its admissibility, no prospective juror should have been required to answer a question of such scope and generality."

See, Annot., 99 A.L.R. 2d 7 (1965) for a detailed discussion as to the propriety of asking prospective jurors hypothetical questions on *voir dire* examination.

The hypothetical question posed in instant case could not reasonably be expected to result in an answer bearing upon a juror's qualifications. Rather it could well tend to commit, influence or ask the jury for a decision in advance of hearing all of the testimony.

It is the function of the court, not of the counsel for either party, to instruct the jury as to the law arising on the evidence. G.S. 1-180. *State v. Mundy,* 265 N.C. 528, 144 S.E. 2d 572. Here the trial judge correctly charged the jury as to the law of circumstantial evidence including the following instruction:

"So after considering the evidence in this way and determining the circumstances, if any, which are established beyond a reasonable doubt, the next thing for the jury to determine is do these circumstances exclude every reasonable conclusion except that of guilt. If so, the evidence is sufficient to convict. If not, it is not sufficient to convict."

We find no error in the trial judge's ruling on the hypothetical question posed by defendant's counsel.

Defendant next contends the trial judge erred by allowing the prosecuting witness to testify she recognized defendant's voice as that of her assailant.

[2, 3] Unless barred by constitutional grounds, identification by voice is admissible. *State v. Coleman,* 270 N.C. 357, 154 S.E. 2d 485; *State v. Hicks,* 233 N.C. 511, 64 S.E. 2d 871; 1 Stansbury's North Carolina Evidence (Brandis Revision) § 96 (1973). When identification testimony is offered and defendant objects and requests a *voir dire* hearing, the trial judge should hear evidence from both the State and the defendant, make findings of fact, and thereupon rule on the admissibility of the evidence. *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174; *State v. Stepney,* 280 N.C. 306, 185 S.E. 2d 844. If the trial judge's findings are supported by the evidence they are conclusive upon appellate courts. *State v. Taylor,* 280 N.C. 273, 185 S.E. 2d 677; *State v. Harris,* 279 N.C. 177, 181 S.E. 2d 420.

The prosecuting witness in this case at all times admitted that she could not identify defendant "by sight." Even so, she did furnish police with a general description as to the height, weight and color of her assailant. During the alleged rape, the assailant spoke several sentences to the prosecutrix, concluding with the statement, "No, no, don't call the police."

Defendant did not testify at the preliminary hearing. Prosecutrix did testify but admitted that she could not identify defendant by sight as her assailant.

After the conclusion of the preliminary hearing, at which time defendant was bound over for trial, prosecutrix by chance overheard a whispered conversation between defendant and his counsel, in which defendant said the words, "No, no."

During the trial in Superior Court, the Solicitor inquired if the witness recognized defendant's voice. Upon objection by defendant's counsel, Judge Rouse excused the jury and conducted a *voir dire* hearing. On *voir dire,* Miss Simpkins in part testified:

"You asked if I can describe the voice of the man who was in my apartment on the morning of the 17th of May and I would say he spoke rather quickly and distinctly. It seemed to me—I mean he had an accent of his own. It didn't have much of a southern drawl. He spoke quickly. The main thing I remember was the way he pronounced

his words and he had long 'o's.' They were very full 'o's.' When he was leaving that night he said, 'No, no, don't call the Police,' and that was in a half whisper. And it was very anxious. When I heard the defendant say 'No, no,' in the District Court it was in the same anxious tone—it could not have been more perfect. I mean it just sounded exactly like it did that night—the same tone, the same words, same accent and everything.

"After I heard this defendant make the statement, 'No, no,' in the District Court I jumped out of my seat just about. I mean it shocked me and I recognized it right then and I told my attorneys about it. I told the people with me that it sounded exactly like the man I had heard that night. I was talking with Detective Page about it. I told him that was it—that was him—that was him."

On cross-examination, the witness admitted that she testified in District Court that she could not identify defendant "by sight"; however, she said that she was "positive beyond a reasonable doubt" that defendant was the person she heard speak on the night she was raped. Defendant offered no evidence on *voir dire*. The court thereupon made findings of fact and conclusions as follows:

"All right. The Court conducted a *voir dire* examination and from the evidence offered the Court makes the following findings of fact:

1. The prosecuting witness is unable to identify the defendant as being her assailant by sight.

2. That she saw the defendant in the District Court at the preliminary hearing.

3. Following the preliminary hearing she overheard the defendant say certain words and specifically the words, 'No, No.' At this time she was some thirty to thirty-five feet away from the defendant.

4. That among the statements allegedly made by the defendant at the time or immediately following the alleged assault were the following: 'No, no, don't call the Police.'

5. That the defendant is identified by the prosecuting witness by his voice.

The Court is of the opinion and finds that there is nothing impermissibly suggestive about the manner and circumstances of this identification and does therefore hold that the voice identification by this witness and the testimony offered on the *voir dire* is admissible."

The jury was recalled and the witness identified defendant as her assailant. On cross-examination, prosecuting witness *for the first time* testified that prior to her appearance in District Court, the police had shown her a picture of defendant, told her his fingerprint matched the one found in her apartment and informed her that defendant had been arrested.

We are not here concerned with defendant's Sixth Amendment guarantee of counsel at a pretrial lineup. There was no exhibition of the accused by the police officers to identifying witnesses before trial and in absence of counsel. *U. S. v. Wade,* 388 U.S. 218 and *Gilbert v. California,* 388 U.S. 263. In fact, at the time the witness recognized defendant's voice, he was talking to his lawyer. We need only to decide whether the unplanned confrontation in District Court occurred under circumstances so "unnecessarily suggestive and conducive to irreparable mistaken identification" as to deprive defendant of his constitutional right of due process. Decision must depend largely upon principles found in cases involving identification by sight. Nevertheless, in our opinion the same constitutional principles apply to identification by voice. *Stovall v. Denno,* 388 U.S. 293.

[4] Whether an accused's constitutional right of due process has been violated by identification procedures depends upon the totality of the circumstances surrounding the confrontation. *Stovall v. Denno, supra.* Applying this standard, the courts have held that a one-man confrontation while defendant was handcuffed and in police custody did not violate due process when the circumstances requiring immediate confrontation were imperative, *Stovall v. Denno, supra,* and that there was no violation of due process in a "station house" confrontation while accused was in police custody when there was ample evidence of identification of independent origin. *State v. Gatling,* 275 N.C. 625, 170 S.E. 2d 593. Likewise "unrigged" courtroom confrontations have been held not violative of due process, *U. S. v. Davis,* 407 F. 2d 846; *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384. Even where the accused was the only Negro sitting at counsel table, our court held such courtroom confrontation not

to be impermissibly suggestive when considered in context with the total circumstances. *State v. Haskins,* 278 N.C. 52, 178 S.E. 2d 610.

Here, the trial judge made findings and concluded that there was nothing "impermissibly suggestive" about the manner and circumstances of the identification. There was ample, competent evidence to support the findings and ruling admitting the in-court identification. *State v. Bass, supra.* However, whether this ruling should stand is beclouded by the facts thereafter elicited from the prosecuting witness by defendant's counsel. We note, that after defendant's counsel elicited this evidence, he did not move for a reconsideration of the ruling admitting the testimony of identification by voice, nor did he lodge a motion for mistrial.

[5] The United States Supreme Court and this Court recognize that when a *confession* is properly admitted, but it is later conclusively or plainly demonstrated *by the entire record* that the confession was involuntary, the entry of judgment without excluding evidence of the confession deprives the defendant of due process. *Davis v. North Carolina,* 384 U.S. 737; *Blackburn v. Alabama,* 361 U.S. 199; *State v. McCloud,* 276 N.C. 518, 173 S.E. 2d 753. Again we are of the opinion that this rule of law applies to the admission of identification testimony as well as to the admission of confessions. We must, therefore, consider the entire record in this case in determining whether the trial judge's ruling admitting the identification testimony may stand. *Blackburn v. Alabama, supra; Stovall v. Denno, supra.*

Admittedly, standing alone, the facts elicited on cross-examination by defendant's counsel could indicate that prosecutrix was exposed to suggestive influences prior to her courtroom identification of defendant. We must, however, consider this testimony in context with the total circumstances surrounding the identification in determining whether the District Court confrontation was violative of due process.

[6] Exhibition of the photograph and the statements concerning defendant's fingerprints and arrest preceded the District Court confrontation. However, it must be borne in mind that the witness did not identify defendant as her assailant at the time the photograph was shown to her. Further, any "impermissible suggestion" arising out of the exhibition of the photograph and the accompanying information did not cause Miss

Simpkins to change her testimony as to her inability to identify defendant by sight. She testified in District Court that she could not identify defendant. It was only upon her first opportunity to hear his voice that the witness Simpkins immediately and positively identified defendant. She testified that her identification did not stem from having seen his photograph, but was based solely upon her recognition of his voice. She described in detail the particular and peculiar characteristics of defendant's voice upon which she based her identification.

We do not believe that the total circumstances surrounding the District Court confrontation established a "very substantial likelihood of irreparable misidentification." *Simmons v. U. S.,* 390 U.S. 377; *State v. Knight,* 282 N.C. 220, 192 S.E. 2d 283.

We hold that there was no error in the admission of identification testimony of the witness Margaret Rose Simpkins.

[7]   Defendant assigns as error the trial judge's ruling admitting into evidence State's Exhibit 14, a fingerprint identification card made in 1962. The exhibit was introduced for the purpose of identifying the latent fingerprint lifted from Miss Simpkins' apartment. Defendant strongly argues that the admission of this exhibit was prejudicial error because it constituted evidence of another separate crime having no relevancy to the crime here charged.

The general rule is that in the trial of a person charged with a criminal offense, who has not testified in his own behalf, the State may not, over objection by defendant, introduce evidence to show that the accused has committed another separate, independent offense when the only relevancy of the evidence is to show the character of the accused or his disposition to commit a similar offense. 1 Stansbury's North Carolina Evidence (Brandis Revision) § 91 (1973) ; *State v. Perry,* 275 N.C. 565, 169 S.E. 2d 839; *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364.

Lieutenant David Turner, admitted by the court as an expert in fingerprint identification, testified that he took the fingerprints of Walter Jackson, Jr. upon his arrest on 28 September 1972. He identified State's Exhibit 15 as containing the fingerprints which he personally took. He further testified that the fingerprints on Exhibit 14 were the fingerprints of Walter Jackson, Jr. and that the thumb print appearing on Exhibit 14 was identical to the latent print lifted from the windowsill of

Miss Simpkins' apartment, and identified as State's Exhibit 13. He testified that the thumb print on Exhibit 15 was identical to a thumb print shown on Exhibit 14.

He stated that the general procedure in the Wilmington Police Department was to enter information on the identification cards at the time of an arrest. On cross-examination, he testified:

> " . . . It is true that one of the areas that have (sic) been altered on that card referred to an unrelated offense unrelated to this particular trial. A criminal offense that is true."

In 1 *Wharton's Criminal Evidence* § 192 (13th ed. 1972), we find the following statement:

> "The introduction in evidence of a fingerprint record containing extraneous material which in itself is incompetent may or may not constitute reversible error, depending on such factors as whether the material was or was not seen by the jury or whether the objection thereto was waived by the defendant."

The Arizona Supreme Court considered a similar question in *Moon v. State,* 22 Ariz. 418, 198 P. 288. Headnote 6 of the opinion as reported in 16 A.L.R. 362 adequately reflects the Court's decision of this question. We quote:

> ".6. Permitting the introduction in a criminal case of the finger-print records of accused, taken from the bureau of identification of a city, is not reversible error because on the same card is his criminal record, if the criminal record was so covered that it was not seen by the jury."

In *State v. Viola* (App.), 51 Ohio L. Abs. 577, 82 N.E. 2d 306, app. dismd. 148 Ohio St. 712, 76 N.E. 2d 715, *cert. den.* 334 U.S. 816, the Court held that the admission of defendant's fingerprints from the F.B.I. files was not error when a portion of a card showing the defendant's conviction of another crime was covered with a sheet of paper sealed to the card.

This Court, considering the effect of the introduction of a "mug shot" in the case of *State v. Hatcher,* 277 N.C. 380, 177 S.E. 2d 892, stated:

> "Defendant contends, however, that introduction of the 'mug shot' photograph of him tended to apprise the

jury of the fact that he had been in trouble before, reflected unfavorably upon his character and suggested that he had been convicted of other crimes. Upon the facts before us defendant's contention is unsound and cannot be sustained. Before the jury was allowed to see the photograph in question, the portions which might have been prejudicial to him *i.e.,* the name of the police department and the date, were covered by an evidence tag. This left only an ordinary photograph, which was offered and admitted for illustrative purposes bearing upon identification of defendant. The photograph was relevant and material on the question of identity and could not have been prejudicial in the sense suggested by defendant. There was nothing on it to connect defendant with previous criminal offenses. In the following cases photographs offered for identification purposes and *containing labels and markings which were covered or removed* were held properly admitted: *Cooper v. State,* 182 Ga. 42, 184 S.E. 716, 104 A.L.R. 1309 (1936) ; *State v. O'Leary,* 25 N.J. 104, 135 A. 2d 321 (1957) ; *State v. Tate,* 74 Wash. 2d 261, 444 P. 2d 150 (1968) ; *People v. Fairchild,* 254 Cal. App. 2d 831, 62 Cal. Rptr. 535 (1967), *cert. den.* 391 U.S. 955; *Johnson v. State,* 247 A. 2d 211 (Del. Sup. 1968) ; *Huerta v. State,* 390 S.W. 2d 770 (Tex. Crim. 1965)."

State's Exhibit 14, as altered prior to its introduction into evidence, does not disclose defendant's criminal record. It does not list a single arrest, indictment, or conviction. The only evidence admitted before the jury which relates the admission of the fingerprint identification card to another criminal offense was the statement of Lieutenant Turner that it was the procedure of the Wilmington Police Department to place fingerprint information on such identification cards when a person was arrested. We do not believe that the inference arising from this testimony was of such force as to prejudicially influence the jury in their consideration of the question of defendant's innocence or guilt.

[8] It should be noted that defendant does not base his argument upon contentions that the introduction of Exhibit 14 was erroneous because it was hearsay or deprived him of his Constitutional rights of confrontation or cross-examination. Assuming, arguendo, that the introduction of Exhibit 14 was erroneous on such grounds, any prejudice to defendant is dispelled by the

fact that the State introduced Exhibit 15, the fingerprint ,taken by Lieutenant Turner on 28 September 1972. Lieutenant ·Turner testified and was cross-examined by counsel for defendant. His testimony tended to show that the latent fingerprint, Exhibit 13; the print taken by Lieutenant Turner on 28 September 1972 upon defendant's arrest, Exhibit 15; and the challenged Exhibit 14 were made by the same thumb.

This assignment of error is overruled. ·

[9]   Defendant also contends that Exhibit 14 should have been excluded as a product of an illegal arrest and detention. He argues that upon his general objection to the admission. of the exhibit, the trial judge should have conducted a *voir dire* examination concerning the legality of his 1962 arrest.

In the absence of evidence to the contrary, the courts are bound to presume that the acts of public officers are in all instances legal. *State v. Brady,* 238 N.C. 407, 78 S.E. 2d 129; *State v. Gaston,* 236 N.C. 499, 73 S.E. 2d 311; *State v. Rhodes,* 233 N.C. 453, 64 S.E. 2d 287.

This record contains no evidence of an illegal arrest or of an illegal detention. The record does disclose that upon objection by defendant's counsel, a *voir dire* hearing was held concerning the admissibility of Exhibit 14. During this hearing, defendant's counsel did not offer evidence, contend, or intimate that the exhibit was the product of an illegal arrest or an illegal detention. Under these circumstances, the trial judge was not required to conduct an inquiry into the legality of the arrest.

There is no merit in this assignment of error.

[10]   Defendant assigns as error the denial of his motion as of nonsuit.

The State's cases are based upon: (1) a fingerprint lifted from the lower sash of the window *inside* the kitchen of the apartment occupied by Miss Simpkins, (2) the voice identification of the defendant by the witness Simpkins.

In *State v. Foster,* 282 N.C. 189, 192 S.E. 2d 320, we considered whether certain fingerprint evidence was sufficient to warrant submitting the case to the jury. There, Chief Justice Bobbitt, speaking for the Court said:

   " 'To warrant a conviction, the fingerprints corresponding to those of the accused must have been found in the

place where the crime was committed under such circumstances that they could only have been impressed at the time when the crime was committed.' Annot., 'Evidence—Finger, Palm, or Footprint,' 28 A.L.R. 2d 1115, 1154, § 29 (1953). See also *State v. Smith,* 274 N.C. 159, 164, 161 S.E. 2d 449, 452 (1968), and authorities there cited."

Miss Simpkins testified that she did not know defendant and had never seen him prior to the morning of 17 May 1972. Nothing appears in the record to show that defendant had ever been in the apartment occupied by Miss Simpkins prior to the morning of 17 May 1972.

When considered in the light most favorable to the State, the State's evidence is sufficient, to support jury findings that: (1) the fingerprint lifted from the window sash was the defendant's fingerprint, (2) this latent fingerprint was placed there on the occasion set out in the bills of indictment, and (3) defendant was the person who committed the crimes charged in the bills of indictment. Further, Miss Simpkins' identification of defendant by his voice was sufficient to repel defendant's motion as of nonsuit. Whether she had ample opportunity to identify defendant's voice went to the weight of the evidence rather than to its admissibility. *State v. Hicks,* 233 N.C. 511, 64 S.E. 2d 871.

We hold that the trial judge correctly submitted the cases to the jury.

We do not deem it necessary to discuss defendant's remaining assignments of error. Suffice it to say that careful examination of the entire record reveals no reversible error.

No error.