STATE OF NORTH CAROLINA v. CLARENCE MELVIN DANIELS

No. 802SC456

(Filed 7 April 1981)

1. **Criminal Law § 91– five months between service of criminal process and trial – no denial of speedy trial**

Defendant was not denied his right to a speedy trial though 153 days elapsed between service of criminal process on him and commencement of trial, since the trial court entered an order of continuance on 11 September 1979 to "protect the interests of the defendant so that he would not be prejudiced by testimony heard during the companion case [of defendant's accomplice]"; the court therefore excluded the time between 11 September 1979, the date on which the continuance was entered, and 15 October 1979, the date on which the next session of criminal court commenced in the county; and with this exclusion defendant was tried within 120 days as required by the Speedy Trial Act. G.S. 15A-701(b)(7).

2. **Criminal Law §§ 58, 60.2– fingerprint cards – handwriting samples – admissibility**

The trial court did not err in admitting fingerprint cards and handwriting samples obtained from defendant by an S.B.I. agent pursuant to an order issued by a district court judge in another county in another case, because nothing in the record indicated that the introduction of the exhibits in question resulted in placing before the jury evidence of separate, independent offenses committed by defendant; nor was there merit in defendant's contention that the evidence should have been excluded by virtue of the State's failure to comply with the statutory requirement that defendant or his attorney be provided a copy of the information as soon as it was available, because defendant's attorney received the reports three and a half months

State v. Daniels

before trial commenced and defendant failed to show prejudice as a result of any delay in providing his attorney with copies of the reports. G.S. 15A-282.

3. **Larceny § 4—felony charged in indictment – conviction of lesser offense proper**
An indictment which charged defendant with the felony of 28 blank company checks was sufficient to sustain a conviction of misdemeanor larceny, although the indictment did not allege the value of the property stolen.

4. **Criminal Law § 22– defendant not served with bill of indictment – arraignment waived – no prejudice**
Where defendant waived arraignment, the proceeding designed to advise him of the charges against him, he could not sustain his burden of showing prejudice from insufficient notice resulting from the technicality of an incomplete officer's return on the bill of indictment.

APPEAL by defendant from *Small, Judge.* Judgment entered 19 December 1979 in Superior Court, BEAUFORT County. Heard in the Court of Appeals 7 October 1980.

Defendant was charged in a bill of indictment, proper in form, with feloniously breaking and entering a building occupied by National Spinning Company, with the intent to commit the felony of larceny therein; with the felonious larceny therefrom of "28 blank company checks with three copies each"; and with feloniously receiving and possessing said checks. The State's evidence pertinent to the charges against defendant was as follows:

Patricia Chandler testified that she was employed by National Spinning Company in Washington, North Carolina, on 3 August 1978. Her duties included signing for checks which came into the data processing center. On 3 August 1978 she logged in some blank checks and placed them in a cabinet in the computer room. On 4 August 1978, when she took the checks out of the cabinet, she found that twenty-eight Chemical Bank checks and eleven Dyemaster, Incorporated checks were missing. She reported this to her immediate supervisor. After identifying several checks as having been among those which were missing, she indicated that when she had last seen the checks on 3 August 1978 they were blank. When she identified them at trial, they showed either Malcolm Goodwin or Goodwin Maintenance Service as the payee and were payable in varying amounts.

Carol Ann Edwards testified that she too was employed by National Spinning Company on 3 August 1978. She was on duty

that evening in the computer room where the blank checks were stored. She left this room on two occasions during the course of the evening, and on both occasions the room was unattended. On the first occasion she went to the guard house in response to a call, and while there she talked to one Patricia Harris for approximately fifteen minutes. She then returned to the computer room. On the second occasion she took a cart to the supply room in back of the plant, again in response to a phone call. She found that the person she thought had called was not on duty in the supply room. She was out of the computer room approximately fifteen minutes on this occasion.

Jerry Case testified that he was the corporate controller for National Spinning Company in August 1978. He identified the checks introduced as State's exhibits "as standard checks that National Spinning Company used in paying some of its bills." He testified that on the morning of 4 August 1978 Pat Chandler and her supervisor had advised him that some of the checks were missing. He also testified that both Patricia Harris and the defendant were former employees of the company.

Patricia Douglas Harris testified that she had worked in the computer room at National Spinning Company and thus was familiar with the check writing and printing procedures. On the night of 3 August 1978 she and the defendant went together to National Spinning Company's building to see Carol Edwards, her friend who worked in the computer room. She went to the company to "lure [Ms. Edwards] out of the computer room so that [defendant] would have access to the materials necessary for the operations that they had planned." The "plans were very simple . . . to get some checks and cash them." The checks were the property of National Spinning Company, "and she and [defendant] participated in the plan." Ms. Harris kept Ms. Edwards for fifteen or twenty minutes talking with her about Ms. Harris' need for assistance due to being "emotionally upset." Defendant stayed in the parking lot on this occasion, as they were unable to get inside the building.

She and defendant "did not want to let the plans drop," however, and they decided to return shortly before 11:00 p.m. when the shift changed. The gates are open at that time, "and you can go through them without any trouble." This time she and defendant "signed the log of some kind of name and pro-

ceeded into the . . . office area." They went to an office adjoining the computer area, where defendant called the operator on duty in the computer room and told her assistance was needed in the back of the plant. The operator left the computer room whereupon Ms. Harris and defendant went to the room and took some checks "from the middle of the stack . . . so they would not be noticed right away."

She and defendant then made plans "as to what amount of money to put on the checks [and] how soon to start busting them (cashing them)." She and defendant went to the Beaufort County Technical Institute where she typed the amount and other information on the checks. Defendant was with her while she did this. They agreed that "Cynthia Waverly" would be Ms. Harris' alias, and half the checks were made payable to "Cynthia Waverly." "Malcolm Goodwin" would be defendant's alias, and the other half were made payable to "Malcolm Goodwin" or "Goodwin's Maintenance Service." They each thereafter negotiated several of the checks.

The State also presented testimony from law enforcement officers who investigated the case.

Defendant's motion to dismiss at the close of the State's evidence was denied. Defendant offered evidence including his testimony denying that he had ever been on the premises in question in the company of Patricia Harris and that he had ever used the name "Malcolm Goodwin" or any other name as an alias. He further denied having the checks in question in his possession at any time. He testified that to his knowledge he had never touched the checks, and that he did not understand how his fingerprints (to which one of the law enforcement officers had testified) got on them.

Defendant's motion to dismiss at the close of the State's rebuttal evidence was granted as to the receiving and possession counts, but denied as to the breaking and entering and larceny counts. The jury returned a verdict of guilty of non-felonious larceny.

From a judgment of imprisonment, defendant appeals.

*Attorney General Edmisten, by Special Deputy Attorney General John R.B. Matthis and Associate Attorney John F. Maddrey, for the State.*

*Wilkinson and Vosburgh, by James R. Vosburgh, for defendant appellant.*

WHICHARD, Judge.

We note at the outset that defendant's brief does not comply with North Carolina Rules of Appellate Procedure, Rule 28(b)(3), in that it does not state the questions presented separately with a reference following each question to the assignments of error and exceptions pertinent thereto. Nor does it comply with Appellate Rule 28(b)(4) which requires "[a] short conclusion stating the precise relief sought." We nevertheless consider the contentions presented pursuant to our inherent residual power expressed in Appellate Rule 2 to suspend the requirements of our rules "[t]o prevent manifest injustice to a party."

[1] Defendant contends that his rights to a speedy trial under the North Carolina Speedy Trial Act, G.S. 15A-701 *et seq.*, and the constitutions of the United States and the State of North Carolina have been violated. The record indicates that criminal process was served on defendant on 17 July 1979. The time limitations for trial imposed by the Speedy Trial Act commenced to run on that date. G.S. 15A-701(al)(1). Defendant was tried at a session which commenced on 17 December 1979. Thus, 153 days elapsed between service of criminal process and commencement of trial. Nothing else appearing, the court should have dismissed the charges against defendant for the State's failure to bring him to trial within 120 days of service of criminal process as required by G.S. 15A-701(al)(1). The trial court, however, excluded the time between 11 September 1979, the date on which an order was entered by Judge James Strickland continuing defendant's case, and 15 October 1979, the date on which the next session of criminal court in Beaufort County commenced. This period was excluded pursuant to G.S. 15A-701(b)(7) which in pertinent part provides for the exclusion of

> [a]ny period of delay resulting from a continuance granted by any judge if the judge granting the continuance finds that the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial and sets forth in writing in the record of the case the reasons for so finding.

G.S. 15A-701(b)(7) (Supp. 1979). The court made the requisite finding "that the ends of justice would be served by granting the continuance and outweigh the best interests of the public and the defendant in a speedy trial." It also found that the "order of continuance ... was to protect the interests of the defendant so that he would not be prejudiced by testimony heard during the companion case [of Patricia Harris], and the defendant has not been prejudiced by such delay as it was in his interest." These findings support the exclusion of the period between 11 September 1979 and 15 October 1979 from the Speedy Trial Act computation. With this exclusion, defendant was tried within 120 days as required by the Act. While defendant contends that the order of continuance was entered *ex parte* without affording him opportunity to be heard, nothing in the record supports his contention except his own allegations; and the order recites that the court "heard arguments of counsel." Further, we can ascertain no prejudice to defendant from the granting of the motion. On the contrary, it appears to have been for his benefit. We thus find no merit in the contention that defendant's rights under the North Carolina Speedy Trial Act were violated. Nor do we find merit in his contention that his constitutional rights to a speedy trial were violated. The time period between service of criminal process and commencement of trial was well within constitutionally permissible limits. *See Barker v. Wingo,* 407 U.S. 514, 33 L. Ed. 2d 101, 92 S. Ct. 2182 (1972); *State v. Moore,* 51 N.C. App. 103, 275 S.E. 2d 257 (1981), *State v. Hartman,* 49 N.C. App. 83, 270 S.E. 2d 609 (1980).

[2] Defendant contends that his constitutional rights have been violated by improper admission of evidence obtained from a non-testimonial identification in a prior case in another county. Specifically, he argues the court erred in admitting fingerprint cards and handwriting samples obtained from defendant by an S.B.I. agent on 22 February 1979 pursuant to an order issued by a district court judge in Wilson County in another case.

The introduction of fingerprint identification cards may be objectionable as violative of the rule prohibiting introduction of evidence showing that the accused has committed another separate, independent offense. It is not objectionable or prej-

udicial *per se*, however. *See State v. Jackson*, 284 N.C. 321, 331-334, 200 S.E. 2d 626, 632-634 (1973); *State v. McNeil*, 28 N.C. App. 347, 220 S.E. 2d 869, *review denied* 289 N.C. 618, 223 S.E. 2d 395 (1976). The admissibility of handwriting comparison evidence has been established in this jurisdiction by statute. G.S. 8-40. Nothing in this record indicates that the introduction of the exhibits in question resulted in placing before the jury evidence of separate, independent offenses committed by defendant. Nor do we find merit in defendant's contention that this evidence should have been excluded by virtue of the State's failure to comply with the statutory requirement that "the subject of nontestimonial identification procedures or his attorney must be provided with a copy of any reports of test results as soon as the reports are available." G.S. 15A-282. The trial court found that the reports were received by the S.B.I. on or about 26 March 1979; that between the date of defendant's arrest on 17 July 1979 and the date of his probable cause hearing on 29 August 1979, copies of the reports were given to the attorney representing defendant in the Wilson County case; and that on 4 September 1979 copies of the reports were given to his attorney in this case. It also found that any delay between receipt of the reports by the S.B.I. agent and furnishing the reports to defendant's attorneys did not result in prejudice to defendant. In view of the fact that defendant's attorney here received the reports on 4 September 1979, some 3½ months before trial commenced, we agree with the trial court's determination that defendant has failed to sustain his burden of showing prejudice as a result of any delay in providing his attorney with copies of these reports. G.S. 15A-1443.

[3] Defendant next contends the indictment fails to charge an offense. The gravamen of his argument appears to be as follows: The indictment is fatally defective in that it fails to allege the value of the property stolen. The jury acquitted defendant on the breaking and entering count. The larceny thus cannot be felonious on the ground that it was committed pursuant to a breaking and entering in violation of G.S. 14-54, as provided in G.S. 14-72(b)(2). Because the larceny was not committed pursuant to a breaking and entering, and because the value of the property stolen was not alleged, the indictment does not properly charge a felony and thus cannot properly charge the lesser included misdemeanor offense.

Defendant's brief contains no citation of authorities in support of this argument. Appellate Rule 28(b)(3). Nor do we find supporting authority for or merit to the contention. The indictment clearly and properly alleges the felony of larceny of twenty-eight blank company checks, the personal property of National Spinning Company. "[T]he misdemeanor of larceny is a less[er] degree of the felony of larceny within the meaning of G.S. 15-170." *State v. Cooper*, 256 N.C. 372, 380, 124 S.E. 2d 91, 97 (1962). This Court, speaking through Judge Clark, has stated: "It is established in the criminal law that the greater crime includes the lesser, so that where an offense is alleged in an indictment, and the jury acquits as to that one, it may convict of the lesser offense when the charge is inclusive of both offenses." *State v. Craig*, 35 N.C. App. 547, 549, 241 S.E. 2d 704, 705 (1978). Thus, the indictment alleging felonious larceny sufficed to sustain the conviction of misdemeanor larceny.

[4] Defendant further contends, with respect to the bill of indictment, that he was not served with a copy thereof and that "[t]his raises serious question as to whether or not the defendant actually had sufficient notice of the charges pending against him." He apparently relies on the incomplete Officer's Return on the "Notice of Return of Bill of Indictment." The record indicates, however, that on 23 August 1979 defendant waived arraignment and entered a plea of not guilty. "[T]he purpose of an arraignment is to advise the defendant of the crime with which he is charged." *State v. Carter*, 30 N.C. App. 59, 61, 226 S.E. 2d 179, 180 *review denied* 290 N.C. 664, 228 S.E. 2d 455 (1976). The defendant, having waived the proceeding designed to advise of the charges against him, cannot sustain his burden of showing prejudice from insufficient notice resulting from the technicality of an incomplete officer's return on the bill of indictment.

By a single sentence in his brief defendant attempts to bring forward numerous exceptions and assignments of error to the trial court's evidentiary rulings. It will suffice to say that we have examined the errors alleged, and we find that neither singly nor (as defendant contends) in their "accumulative effect" do the matters alleged establish error "so prejudicial as to amount to a denial of the defendant's rights to a fair trial."

Defendant contends the court erred in denying his motions

to dismiss at the close of the State's evidence and at the close of all the evidence.

> Defendant introduced evidence, and by doing so waived his right to except on appeal to the denial of his motion for [dismissal] at the close of the State's evidence. G.S. 15-173. His exception to the denial of his motion for [dismissal] made at the close of all the evidence raises the question of the sufficiency of all the evidence to go to the jury.

*State v. Rigsbee,* 285 N.C. 708, 715, 208 S.E. 2d 656, 661 (1974). *See also State v. Jones,* 296 N.C. 75, 77, 248 S.E. 2d 858, 859 (1978). Without considering evidence which defendant contends should have been excluded, there was plenary evidence, when considered in the light most favorable to the State, "to establish each essential element of the offense charged and the defendant as the perpetrator thereof." *State v. Rogers,* 49 N.C. App. 337, 345, 271 S.E. 2d 535, 540 *review denied* 301 N.C. 530, 273 S.E. 2d 464 (1980). This contention is without merit.

Defendant finally contends that certain portions of the charge were erroneous and prejudicial. We have examined the portions complained of, and we find no prejudicial error.

Defendant's failure to comply with the Rules of Appellate Procedure considerably enhanced the difficulty of our task in reviewing the errors alleged. We nevertheless have examined carefully the contentions presented, both in the document captioned "Motion to Dismiss Pursuant to G.S. 15A-954" set forth at the commencement of defendant's brief, and in the brief itself. On the basis of this examination we deny the motion, and we find that defendant had a fair trial free from prejudicial error.

No error.

Judges CLARK and WEBB concur.