STATE OF NORTH CAROLINA v. ALFRED BURNS

No. 226A82

(Filed 7 December 1982)

1. Criminal Law § 80.3— prior statement by victim—use of different words—admissibility for corroboration

In a prosecution of defendant upon two counts of first degree sexual offense with his stepchildren, a doctor's testimony relating one child's description to her of the emission from defendant during ejaculation was admissible to corroborate the child's testimony at trial although the words used by the child in his description to the doctor were not identical to the words he used during his testimony at trial.

State v. Burns

**2. Criminal Law § 89.3— prior statement by victim—admissibility for corroboration**

Testimony by a social worker that a child had said that defendant "had not wanted [him] to tell anybody" was admissible to corroborate the child's testimony that defendant "told us not to [talk to anyone] because they would put him in jail."

**3. Criminal Law § 89.2— corroborative testimony**

It is not necessary in every case that evidence tend to prove the precise facts brought out in a witness's testimony before that evidence may be deemed corroborative of such testimony and properly admissible.

**4. Criminal Law § 89.2— prior statements by victims—admissibility for corroboration**

In a prosecution of defendant upon two counts of first degree sexual offense with his two stepchildren, testimony by a doctor, a teacher and a social worker concerning prior statements made to them by the children was admissible to corroborate testimony of the children indicating a continuing course of sexual abuse of both of them by defendant, although the prior statements did not tend to prove the precise narrow facts brought out in the children's testimony during the trial.

**5. Rape and Allied Offenses § 4.3— sexual offense—untruthfulness of child victim on prior occasion—no probative value—exclusion as harmless error**

In a prosecution of defendant for first degree sexual offense with his two stepchildren, even if testimony concerning the female victim's conduct with another child some four or five years prior to defendant's acts when the victim was only four or five years old tended to show untruthfulness on her part and was not inadmissible under the rape victim shield statute, G.S. 8-56, such testimony would have minimal probative value on the question of her truthfulness at defendant's trial. Assuming arguendo that such testimony had sufficient probative value to be competent, its exclusion was harmless beyond a reasonable doubt in light of the strong eyewitness testimony of the children and the corroborating medical evidence.

APPEAL by the defendant from Judgment of *Albright, Judge*, entered at the 14 December 1981 Criminal Session of Superior Court, ROCKINGHAM County.

The defendant was tried upon two indictments, proper in form, charging him with separate counts of first degree sexual offense. The defendant having pled not guilty, the jury found him guilty of both offenses. From the trial court's judgments sentencing him to life imprisonment in each case, the defendant appealed to the Supreme Court as a matter of right pursuant to G.S. 7A-27(a).

*Rufus L. Edmisten, Attorney General, by Nonnie F. Midgette, Assistant Attorney General for the State.*

*Douglas R. Hux, Attorney for defendant-appellant.*

MITCHELL, Justice.

At trial the State called various witnesses whose testimony tended to show *inter alia* the following:

Malinda Lea Hardison lived with her mother, her brother Allen and the defendant, her stepfather Alfred Burns, during the summer of 1981. At that time she was nine years old. She testified that during that summer the defendant Alfred Burns required her at various times to commit fellatio and masturbation upon him and that he committed acts of cunnilingus, sexual intercourse and sodomy upon her. These acts took place primarily in a hay barn behind their house in Rockingham County. Some of the acts took place in the house, but Malinda could not recall in which rooms of the house they took place. Malinda also testified that she had seen the defendant make her younger brother Allen perform masturbation upon him. She further testified that sometimes her brother Allen was present when the defendant performed the various sexual acts with or upon her and sometimes she was alone with the defendant on these occasions.

Allen Hardison testified that he was six years old. During the summer of 1981 he had lived with his sister Malinda, his mother and the defendant Alfred Burns. Allen testified that, on more than one occasion during that summer, the defendant Alfred Burns made Allen perform fellatio upon him. Allen also testified that he had seen the defendant perform cunnilingus, sexual intercourse and sodomy upon his sister Malinda during that period of time as well as make her perform fellatio.

Mary Burns testified that she was the mother of Malinda and Allen Hardison and the wife of the defendant Alfred Burns. During the summer of 1981 she was employed outside the home during the evenings and usually returned home at approximately 7:15 a.m. She would then clean the house and go to bed around 11:00 a.m. The defendant usually kept the children while she was sleeping or at work. On the day the defendant was arrested for the crimes charged in the present case, Mary Burns asked the chil-

dren if Alfred had ever performed any sexual act with them or made them perform such acts upon him. Each child at first denied that such acts had occurred but later stated that they had and described the acts in detail.

Sue Aldridge testified that she was a second and third grade combination teacher in the Rockingham County Schools. Malinda was assigned to her third grade class. Malinda seemed very nervous and at first Aldridge attributed this to her being a new student. The nervousness continued, however, and Malinda began to complain that she was sick. Aldridge would take Malinda to the bathroom, where Malinda would sit on the floor with her head over the commode and say that she was sick. This continued for several days with the child continuing to exhibit nervousness. Malinda came to Aldridge on 21 September 1981 and stated that she had to talk to her. Malinda then told Aldridge that "her stepfather was trying to get her to play with him and she didn't want to." After further conversation with Malinda, Aldridge informed the principal who called the Rockingham Department of Social Services. Amy Tuttle and Wanda Dickerson from the Department of Social Services came to the school that day. Aldridge told them about the situation and introduced Malinda to them and left her with them. She waited for Malinda and later returned with her to the classroom. As the days went on after 21 September 1981, Malinda was much calmer, worked harder and seemed much happier.

Amy Tuttle testified that she worked in protective service for children at the Rockingham Department of Social Services. In that capacity she investigated child abuse and rape cases and negligence and abuse cases against adults. She had been so employed for six years. She talked with Malinda in private for about an hour on 21 September 1981. Malinda described to Tuttle various sexual acts which she said the defendant had performed with and upon her and her brother Allen and sexual acts the defendant had made the children perform upon him in the barn behind their house.

Tuttle further testified that on 28 September 1981 Mary Burns came into Tuttle's office with six-year old Allen. During Tuttle's interview with him, Allen described various sexual acts the defendant had required Allen and Malinda to perform upon

him and sexual acts the defendant had performed with and upon Malinda in Allen's presence.

Brenda Maddox testified that she was a marriage and family therapist in Reidsville. She had seen Malinda six times for counseling sessions of about forty-five minutes each. She had also seen Allen on two occasions. Each child described to Maddox certain of the sexual acts in question.

Dr. J.A.N. German, a pediatrician, was stipulated to be a medical expert. She testified that she had examined Malinda Hardison on 21 September 1981. She said that on that date Malinda told her that on occasion the defendant would take Malinda from her bed to his bed and "fondle her and press with his penis in the vaginal area." Malinda complained to Dr. German of pain during urination and rectal pain of approximately one week's duration. Malinda was hesitant about discussing what had happened.

Dr. German testified that her physical examination of Malinda revealed bruises on Malinda's vagina and that the vaginal opening was larger than would be expected in a child of her age. Dr. German testified that she determined this by inspection with a speculum-tracheoscope about five centimeters round. She testified that such examinations were usually done under anesthesia, but that the instrument went into the child's vaginal opening without any problem which was not normal for a child of Malinda's age. Her vaginal examination of Malinda revealed no hymen. She testified that when the hymen is gone in children of Malinda's age tears or tags are usually seen on either side of the vagina. These tags disappear as the person grows older. There were none in Malinda. Dr. German's examination also revealed bruising of tissue and marked tenderness to pressure in Malinda's rectal area. When Dr. German examined Malinda again on 6 October 1981 none of these findings were present except the larger than usual vaginal opening. Dr. German formed the opinion that Malinda's vagina had been penetrated by a foreign object. She recommended counseling for both Malinda and Allen.

The defendant offered evidence through various witnesses tending to show the following:

Patricia Easter testified that she was the defendant's sister and lived in Beaufort, North Carolina. She had seen the defendant with the children frequently before they moved to Rockingham

County. Easter testified that the defendant never physically abused or beat the children and sent them to Sunday School. Easter also testified that her husband Frank had been charged with the crime of taking indecent liberties with a nine-year old girl on 14 April 1981 in Beaufort. The defendant attempted to introduce additional testimony by Easter which was excluded. The excluded testimony will be discussed later in this opinion.

The defendant's father, brother and others testified on the defendant's behalf. Their testimony tended to show the defendant's good character and reputation and that he had regularly cared for the children and provided for their needs.

The defendant took the stand and testified in his own behalf. He testified that to his knowledge none of the things the children had testified to had actually occurred.

Other testimony offered on behalf of the State and the defendant will be reviewed hereinafter as the need arises.

The defendant assigns as error the admission into evidence of testimony of various of the State's witnesses with regard to statements made to them by the children Malinda and Allen which related to sexual acts by the defendant with the children. The defendant contends that this testimony was not admissible as it did not tend to corroborate the earlier testimony of the children. This assignment of error is without merit.

[1] Evidence which is inadmissible for substantive or illustrative purposes may nevertheless be admitted as corroborative evidence in appropriate cases when it tends to enhance the credibility of a witness. *See Brandis on North Carolina Evidence,* §§ 49 & 52 (2nd rev. ed. 1982). In the present case, however, the defendant contends that certain testimony of witnesses concerning statements made to them by the children contradicted the children's testimony and was not corroborative. We do not find this to be the case. The defendant bases this assignment of error upon his exceptions numbered one through six. Exception Number Two related to testimony by Dr. German in which she recounted Allen's description to her of the emission from the defendant during ejaculation. It is unnecessary for us to set forth this testimony in graphic detail in order to state that it was substantially similar to testimony elicited during the direct examination

of the child. It is true that the words used by Allen in describing the emission to Dr. German were not identical to the words he used during his testimony at trial. Slight variances or inconsistencies in and between the corroborative testimony and that sought to be corroborated, however, do not render the corroborative testimony inadmissible. *State v. Bryant* (White and Holloman), 282 N.C. 92, 191 S.E. 2d 745 (1972), *cert. denied sub nom. White v. North Carolina*, 410 U.S. 958, 35 L.Ed. 2d 691, 93 S.Ct. 1432, *Holloman v. North Carolina*, 410 U.S. 987, 36 L.Ed. 2d 184, 93 S.Ct. 1516 (1973). In the ordinary course of things, an individual will not describe the same event in precisely the same way on any two occasions. Nor is it necessary that a person do so in order that his prior consistent statements be admissible to corroborate his testimony at trial. Indeed, if a person recounted the same event in precisely the same words on several occasions without some minor variations, it might reasonably be suspected that he had contrived and memorized his account. The very minor variances or inconsistencies between Allen's testimony and his prior statement to Dr. German did not make her testimony about this prior statement any less corroborative and it was properly admitted.

[2] The defendant's Exception Number Six is directed to testimony by Amy Tuttle of the Rockingham Department of Social Services that Allen said that the defendant "had not wanted Allen to tell anybody." This statement to Tuttle directly corroborated Allen's statement during his testimony at trial that the defendant "told us not to [talk to anyone] because they would put him in jail." Any minor variance or inconsistency between these two statements was clearly not sufficient to render the statement made by Allen to Tuttle inadmissible as corroborative of Allen's testimony at trial.

The remaining exceptions in support of this assignment relate to other statements of witnesses concerning prior statements of the children. Exception Number One was to Dr. German's testimony that Malinda told her that "on occasion her stepfather would take her from her bed to his bed and fondle her and press with his penis in the vaginal area." Exception Number Three was to testimony by Sue Aldridge, Malinda's teacher, that Malinda told her "that her stepfather was trying to get her to play with him and she didn't want to. She said he wanted her to touch that

thing at night at home while her mother was at work." Exception Number Four was to testimony by Tuttle that Malinda had told her that her "stepfather tries to get in bed with me—I don't want him in bed with me . . . I felt him pushing up against my back." Exception Number Five was to Tuttle's testimony that Allen had told her "that on another occasion they did 'more nasty stuff,' that Mr. Burns had played with Allen's hinney and stuck his finger in Malinda's hinney." The defendant contends that this testimony by the witnesses concerning prior statements made to them by the children did not repeat testimony given by the children and did not corroborate the children's testimony.

[3, 4] It is not necessary in every case that evidence tend to prove the precise facts brought out in a witness's testimony before that evidence may be deemed corroborative of such testimony and properly admissible. The term "corroborate" means "[t]o strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence." *State v. Case*, 253 N.C. 130, 135, 116 S.E. 2d 429, 433 (1960), *cert. denied*, 365 U.S. 830, 5 L.Ed. 2d 707, 81 S.Ct. 717 (1961), quoting BLACK'S LAW DIC- TIONARY 444 (3d ed.). "Corroborating evidence is supplementary to that already given and tending to strengthen or confirm it." *State v. Lassiter*, 191 N.C. 210, 212-13, 131 S.E. 577, 579 (1926). In the present case, the corroborative testimony which is the subject of the defendant's exceptions apparently does not restate specific facts testified to by the child witnesses. The children's testimony at trial, however, indicated quite clearly a continuing course of sexual abuse by the defendant of both of them involving sexual intercourse, fellatio, cunnilingus, sodomy, masturbation and other abuse. The prior statements of the children did not inject evidence of acts or crimes of the defendant having no direct bear- ing upon the crimes charged against him. The children's prior statements to the doctor, a teacher and a social worker, although perhaps not tending to prove the precise narrow facts brought out in the children's testimony during the trial, certainly con- stituted corroborating evidence supplementary to their testimony and tending to strengthen or confirm their testimony. Therefore, the testimony of the witnesses concerning the prior statements of the children to them was admissible as tending to corroborate the testimony of the children. Whether it in fact corroborated the children's testimony was, of course, a question for the jury after

proper instructions from the trial court. *Brandis on North Carolina Evidence*, § 52 (2nd rev. ed. 1982); *see State v. Tolley*, 290 N.C. 349, 226 S.E. 2d 353 (1976).

We further find that, even had the evidence complained of under this assignment been incompetent, its admission into evidence was not reversible error. The defendant at no time objected to any of the testimony which forms the basis for his exceptions under this assignment of error. Nor did he move to strike the testimony or seek to have its admission into evidence restricted to corroborative purposes. Thus, any basis for the defendant's first six exceptions and first assignment of error was lost. *See generally 12 Strong's N.C. Index 3d, Trial* §§ 15, 15.3 and 15.4.

[5] The defendant also assigns as error the trial court's exclusion of certain evidence he sought to introduce through the testimony of his sister Patricia Easter. The trial court conducted an *in camera* hearing during which Easter testified that sometime during 1976 or 1977 she caught Malinda and her son Ronald who was Malinda's age "looking at each other." Her son Ronald had his trousers down at the time. Easter stated that her son Ronald "admitted he'd been doing something, but Malinda denied doing anything." Easter testified that Malinda "finally broke down and admitted kissing Ronnie. This was 30 or 40 minutes after I caught them." The trial court excluded this testimony as being inadmissible under G.S. 8-58.6, commonly referred to as the rape victim shield statute.

The defendant contends that the trial court erred in excluding this testimony by Easter as it was offered to show the untruthfulness of the child victim and not her past sexual behavior. We have recently held that G.S. 8-58.6 does not prevent introduction of evidence by a defendant which tends to show untruthfulness on the part of the victim merely because such evidence also tends to reveal past sexual behavior of the victim. *State v. Younger*, 306 N.C. 692, 295 S.E. 2d 453 (1982). It is unnecessary for us to determine whether the testimony of Easter during the *in camera* hearing rose to the level of testimony revealing past sexual behavior of the victim within the meaning of G.S. 8-58.6. The conduct described by Easter occurred between the children at least four years prior to the criminal acts charged against the defendant. At that time Malinda and Ronald were

each either four or five years old. The conduct involved that sort of "looking at each other" common among children of that age. Whether Malinda immediately told the truth about that incident at that time would, at most, have minimal probative value on the question of her truthfulness at the defendant's trial. Assuming *arguendo* that such testimony had sufficient probative value to be competent, its exclusion was harmless beyond a reasonable doubt in light of the strong eyewitness testimony of the children and the corroborating medical evidence.

The defendant additionally contends under this assignment of error that the trial court erred in excluding certain other testimony which he sought to elicit from the witness Easter. If allowed to, Easter would have testified that:

> I was present when Malinda told Alfred that she had been having sexual dreams. Mary left the house because she was too mad at Malinda because of the incident I testified about in chambers previously. Mary was throwing a fit about it. I told her what Malinda said and I think Alfred did, too.

The defendant contends that this evidence was admissible to rebut testimony by Malinda that she had not told her mother that she had dreamed of any of the sexual events that she had described the defendant as having committed and to rebut the testimony of her mother to the same effect. Easter's excluded testimony did not tend to rebut any such statements by Malinda as it in no way indicated that Malinda in fact ever told her mother that she had had such dreams. At most Easter's testimony tends to indicate that Malinda told the defendant she had had such dreams and that Easter and the defendant told this to Malinda's mother Mary. Even if it is assumed that this excluded testimony of the defendant's sister was admissible, we conclude its exclusion was harmless beyond a reasonable doubt in light of the strong evidence of the two victims and the corroborating medical evidence and other evidence offered by the State. This assignment of error is without merit.

We hold that the defendant received a fair trial, free from prejudicial error.

No error.