STATE OF NORTH CAROLINA v. LEROY E. McKNIGHT

No. 8714SC280

(Filed 3 November 1987)

**1. Criminal Law §§ 34.1, 60.2— admissibility of fingerprint card**

The admission of a fingerprint card made pursuant to a prior, unrelated arrest and an officer's testimony that fingerprint cards are made when a person is arrested on a serious misdemeanor charge did not violate N.C.G.S. § 8C-1, Rule 404(b) where the fingerprint card was introduced for the sole purpose of identifying a latent fingerprint lifted from a credit application given to an employee of the store where the crime occurred.

**2. Criminal Law § 34.1— defendant as suspect in other crimes—erroneous testimony—failure to object**

A police officer's testimony that defendant has been the prime suspect in several cases he has investigated violated N.C.G.S. § 8C-1, Rule 404(b). However, defendant waived his right to raise this error on appeal by failing to object or note an exception to such evidence at the trial, and the admission of such evidence did not constitute "plain error" entitling defendant to a new trial even though he failed to object. App. Rule 10(a).

**3. Criminal Law § 34.5— defendant known as "jewelry person"—erroneous testimony—absence of prejudice**

An officer's testimony in a larceny case that defendant was known to the police as a "jewelry person" whose normal mode of operation was removing items by lifting countertops was not admissible under the identity exception of N.C.G.S. § 8C-1, Rule 404(b) where there was no evidence that defendant had in fact committed any prior offense. However, the admission of such testimony over objection was not prejudicial error since (1) similar testimony had previously been admitted without objection; (2) there was no reasonable possibility that a different verdict would have been reached if such testimony had not been admitted; and (3) defendant "opened the door" to such testimony by asking the witness whether his statement to a fellow officer that the larceny in question appeared to be the work of defendant was not a figment of his imagination.

APPEAL by defendant from *Bailey, Judge.* Judgment entered 14 August 1986 in Superior Court, DURHAM County. Heard in the Court of Appeals 3 September 1987.

Defendant was tried on a bill of indictment proper in form with felonious larceny. At trial the State presented evidence which tended to show the following: On 29 April 1986, defendant entered Bailey, Banks, and Biddle, a jewelry store located in Northgate Mall, Durham, North Carolina. Defendant approached one of four employees in the store and requested a credit applica-

tion. Upon receiving the application, defendant sat in front of a glass case jewelry counter in which Rolex watches were displayed and proceeded to fill out the application. At this time, the glass in the counter was intact and nothing was missing. The store policy was to assist customers in completing credit applications; however, defendant refused any assistance and stated that he wanted to do it himself. Defendant was left alone to complete the application. Defendant appeared to be nervous and three times when employees of the store approached him, defendant got up from his seat at the jewelry counter and met the employees. Defendant was seated at the jewelry counter approximately 15-20 minutes completing the application. After defendant completed the application, gave it to an employee, and was told that it would take approximately one hour to process, defendant left the store. No other customer was at the counter from the time defendant entered the store through the time defendant left and the time the property was discovered missing. Within 30 seconds of defendant's departure, an employee noticed that the glass in the counter where defendant had been sitting was out of place and two Rolex watches having a combined value in excess of $12,000.00 were missing. The employees of the store and a customer visiting the store at the time identified defendant as the person in the store prior to the discovery of the missing watches. Defendant's fingerprints were lifted from the application and it was also determined that the name and address defendant wrote on the application were false.

Defendant presented no evidence. The jury returned a verdict of guilty and from an active sentence of 10 years, defendant appeals.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Barbara A. Shaw, for the State.*

*Malcolm Ray Hunter, Jr., Chief Appellate Defender, by Assistant Appellate Defender Gayle L. Moses, for defendant.*

JOHNSON, Judge.

We note at the outset, that defendant has not brought forward three Assignments of Error. We deem the assignments abandoned and decline to review them. "Questions raised by assignments of error in appeals from trial tribunals but not then

presented and discussed in a party's brief, are deemed abandoned." N.C.R. App. P. 28(a). Each of the defendant's remaining three Assignments of Error deal with the admission of evidence. Defendant contends that as to each issue the trial court committed prejudicial error in the admission of evidence concerning possible prior unrelated criminal acts committed by defendant. The admission of this evidence, defendant argues, violated the longstanding general rule in North Carolina that:

> [T]he State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense. (Citations omitted.)

*State v. McClain*, 240 N.C. 171, 173, 81 S.E. 2d 364, 365 (1954). This rule is subject, however, to the exceptions stated in Rule 404(b) which codifies the general rule and reads as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident.

N.C.G.S. Sec. 8C-1, Rule 404(b) (1986).

[1] In the first instance of which defendant complains, Officer Larry Russell of the Durham Police Department was allowed to identify State's Exhibit No. 10, a fingerprint identification card. Officer Russell testified that on 27 January 1982 he took defendant's fingerprints; that State's Exhibit No. 10 is one of three fingerprint cards taken by his department when a person is arrested on a serious misdemeanor charge. Defendant's objection and motion to strike this testimony were overruled.

We find no merit to defendant's contention that the admission of this evidence violated Rule 404(b). The State did not offer defendant's 1982 fingerprint identification card into evidence to show the character of defendant or to show that defendant had committed any other crime. As identity was an important issue in the case, the State offered the exhibit for the sole purpose of identifying the latent fingerprints taken from the credit application completed by the individual suspected of the larceny and submitted in the name of a Larry F. McKinney. Officer Rodney

Sawyer, the identification officer with the Durham Police Department, later testified that he compared the latent fingerprints lifted from the credit application with defendant's fingerprints on defendant's fingerprint card, State's Exhibit No. 10.

The only evidence admitted before the jury which relates the fingerprint identification card to another criminal offense was Officer Russell's statement that the fingerprint identification cards are printed when someone is arrested on a serious misdemeanor charge.

In *State v. Jackson*, 284 N.C. 321, 200 S.E. 2d 626 (1973), our Supreme Court addressed the identical question raised here, to wit: the admissibility of a fingerprint identification card made pursuant to a prior, unrelated arrest. There, the Court found no prejudicial error in the admission of a fingerprint identification card made pursuant to a prior, unrelated arrest, and introduced for the sole purpose of identifying, as in the instant case, a latent fingerprint lifted at the scene of the crime for which defendant was being tried. In so holding, the Court stated that any inference arising from testimony that fingerprinting is customary when someone is arrested was not of such force as to prejudicially influence the jury.

This Court, in applying *Jackson, supra,* reached a similar result in *State v. Scober,* 74 N.C. App. 469, 328 S.E. 2d 590 (1985). There, the Court held that the admission of a fingerprint identification card made pursuant to a prior, unrelated arrest did not violate the "longstanding general rule in North Carolina that 'in a prosecution for a particular crime, the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense.'" *Id.* at 472, 328 S.E. 2d at 592 (*quoting State v. McClain,* 240 N.C. 171, 173, 81 S.E. 2d 364, 365 (1954) ).

We likewise hold in the instant case that the admission of defendant's 1982 fingerprint identification card and the testimony regarding same did not violate the longstanding general rule of practice in this State, now codified in Rule 404(b).

[2]  In the second instance, during cross-examination of Detective A. J. Carter of the Durham Police Department, the following colloquy took place:

Q. Mr. Carter, how long have you known Leroy McKnight?

A. I still don't know him, sir.

Q. Prior to April 29 had you ever had a conversation with him?

A. Prior to what date is that now?

Q. April 29, 1986?

A. No, sir, I have not had a conversation with him that I can recall, however, I have —

Q. I merely ask you if you had a conversation.

COURT: Let him finish his answer. You may complete your answer. [EXCEPTION NO. 3] NO OBJECTION STATED AT TRIAL

A. However, I have had occasion to investigate several times where he was the prime suspect.

[No objection noted at trial]

Defendant failed to object, move to strike or except to Detective Carter's testimony that defendant has been the prime suspect in several cases he has investigated. This testimony clearly violated Rule 404(b). It does not fall within any of the exceptions of the Rule. The evidence does not show that defendant had, in fact, committed any other crimes. It simply showed that defendant was a suspect and relates only to possible character. Therefore, the evidence was inadmissible. However, by failing to object or to note an exception to the evidence when presented and admitted at trial, defendant has waived his right to raise this error on appeal, *State v. Oliver*, 309 N.C. 326, 307 S.E. 2d 304 (1983); *accord*, Rule 10(a), N.C.R. App. P., unless defendant can show that the alleged error constitutes "plain error." *State v. Black*, 308 N.C. 736, 303 S.E. 2d 804 (1983).

In *State v. Walker*, 316 N.C. 33, 340 S.E. 2d 80 (1986), our Supreme Court stated that:

Before deciding that an error by the trial court amounts to 'plain error,' the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. In other words, the appellate court must de-

termine that the error in question 'tilted the scales' and caused the jury to reach its verdict convicting the defendant.

*Id.* at 39, 340 S.E. 2d at 83, *citing State v. Odom,* 307 N.C. 655, 300 S.E. 2d 375 (1983); *State v. Black, supra.*

From our required review of the entire record, *State v. Black, supra,* we are led to conclude that this error does not rise to the level of "plain error." We are convinced that absent this error, the jury probably would not have reached a different verdict. The evidence showed that defendant entered the store to complete a credit application. Defendant appeared to be nervous. After receiving the application, defendant sat at a glass case jewelry counter to complete the application and refused an employee's offer of assistance to help him complete it. The jewelry case where defendant was seated contained Rolex watches. The glass jewelry case was intact and not any property was missing from within the jewlery case at the time. On three separate occasions when an employee of the store walked toward defendant, defendant got up and met the employee before the employee reached the area where defendant was seated. Each time, after conversing with the employee momentarily, defendant returned to his seat at the jewelry counter. Defendant sat at the counter approximately 15-20 minutes completing the application. After defendant completed the application, he gave it to an employee, inquired as to how long it would take to approve it, and left the store. Within 30 seconds after defendant left the store, it was discovered that the glass top of the jewelry case where defendant had been sitting had been lifted from its seal and was resting in a "catercornered" position and two Rolex watches were missing from within the jewelry case. From the time defendant entered the store and sat at the counter, until store employees discovered that the watches were missing, no other customer was in the vicinity of the jewelry counter. Also, as heretofore noted, defendant completed the application with a false name and address.

Based upon this evidence, we do not believe that the error complained of here "tilted the scales," causing the jury to find defendant guilty. Defendant has not carried his burden of showing "plain error."

[3] By his final Assignment of Error defendant contends that the trial court erred in the admission of testimony that defendant is

known as a "jewelry person," and that his normal mode of operation was lifting countertops, removing items and replacing the countertops without shattering them.

On further cross-examination of Detective Carter the following colloquy occurred:

Q. Officer, my question is, you say that you have had occasion to investigate crimes, or alleged crimes, that Mr. McKnight [defendant] was a suspect in?

A. That is correct.

Q. Now, sir, in approximately how many of those have you investigated?

A. Three or four, sir.

Q. In the three or four crimes that you have investigated in which you say that Mr. McKnight was a prime suspect, has he ever been charged, tried, or convicted of any of those crimes?

A. Yes, sir, in Raleigh. I assisted the Raleigh officers on a case they had against Mr. McKnight in which they charged him, so if you are asking if I charged him, then the answer is no, but if you ask me if I have assisted, then yes, I have.

Q. Was Mr. McKnight convicted of any crime there?

A. I am unable to advise.

Q. So of all the cases you say you have been involved in that you say Mr. McKnight was a prime suspect in, in none of them do you know of any conviction, do you?

A. I guess not, sir.

Q. So now your statement to your fellow officer that the mere theft from Bailey, Banks & Biddle on April 29 appeared to you to be the work of Mr. McKnight was a pure figment of your imagination?

A. No, sir.

. . . . . . . . .

On redirect examination of Detective Carter by the State the following colloquy occurred:

Q. Tell the members of the jury why this was not a figment of your imagination that you suspected Mr. McKnight.

A. Mr. McKnight is known to the Durham Police Department as a jewelry person, one of his major—

OBJECTION;

OVERRULED.

COURT: You opened that door, Mr. Malone, you may proceed.

A. He [defendant] is known to the Durham Police Department as a jewelry person, and his normal MO, mode of operation, or the way that he does things is by lifting the counter tops and removing the items and it is known that he is good enough to replace it without shattering the top of it.

The burden is on defendant to not only show error but also to show that the error was prejudicial, that is, that without the error it is likely that a different result would have been reached. *State v. Loren*, 302 N.C. 607, 276 S.E. 2d 365 (1981); N.C.G.S. 15A-1443.

The State argues that defense counsel "opened the door" for the testimony defendant objected to; that the testimony was relevant and probative on the question of identity; and further, that defendant has failed to show that the admission of the testimony was prejudicial.

We do not agree with the State that the testimony objected to was admissible on the question of identity under the exception to Rule 404(b).

In the general rule stated in *State v. McClain, supra* (now codified in Rule 404(b) ), the Court stated,

Where the accused is not definitely identified as the perpetrator of the crime charged and the circumstances tend to show that the crime charged and another offense were committed by the same person, *evidence that the accused committed the other offense is admissible to identify him as the perpetrator of the crime charged.* (Emphasis added.)

240 N.C. at 175, 81 S.E. 2d at 367. In the case *sub judice*, as pointed out by defendant, there is no evidence that defendant

had, in fact, committed any prior offense. At best, the evidence only showed that defendant was a suspect in prior larcenies which were similar to the offense committed at Bailey, Banks and Biddle. Because there was no evidence that defendant had committed any of the prior offenses he was suspected of, the testimony objected to was inadmissible.

Although we hold that the testimony was improperly admitted, we also hold that its admission was harmless error. It is well settled that where evidence is admitted over objection, and the same or similar evidence has been previously admitted or is later admitted without objection, the benefit of objection is lost. *State v. Whitley,* 311 N.C. 656, 319 S.E. 2d 584 (1984); 1 Brandis on North Carolina Evidence, sec. 30 (1982).

Defendant raised no objection at trial when Detective Carter, in his direct testimony, testified to the effect that when he was informed of the larceny from Bailey, Banks and Biddle and that the larceny was accomplished by someone lifting the casing of the jewelry countertop, he told Detective Taylor that, "that fit the description of the type of work that Leroy McKnight does." This testimony, in effect, is the same as the testimony defendant objected to during redirect examination by the State. Having failed to object when the testimony was presented and admitted on direct examination, the benefit of defendant's subsequent objection to its admission at a later time was lost. *State v. Whitley, supra.* Nonetheless, we do not believe that there is a reasonable possibility that a different verdict would have been reached if the trial court had not allowed the testimony in over defendant's objection. Defendant was not prejudiced by the admission of this testimony into evidence, over objection, where defendant allowed the same evidence to come in earlier without objection.

Also, as to this assignment of error, defense counsel's question to Detective Carter that Carter's statement that the theft from Bailey, Banks and Biddle was a "pure figment of your [Carter's] imagination?" was as this Court stated in *State v. Neely,* 4 N.C. App. 475, 166 S.E. 2d 878 (1969), "calculated to elicit the very response which was given. [The witness] had a right to explain his answer and defense counsel 'opened the door' for such an explanation." *Id.* at 477, 166 S.E. 2d at 879. *See, State v. Williams,* 255 N.C. 82, 120 S.E. 2d 442 (1961); *see also, State v.*

*Burgin,* 313 N.C. 404, 329 S.E. 2d 653 (1985); *State v. Brown,* 64 N.C. App. 637, 308 S.E. 2d 346 (1983).

Defendant does not argue that the admission of this evidence on direct examination constitutes "plain error." Nor has defendant, as required by *State v. Oliver, supra,* alerted this Court in his brief that defendant failed to take action at the trial level to the admission of the evidence on direct examination. *See also, State v. Walker, supra.*

We hold that defendant received a fair trial free from prejudicial error.

No error.

Judges BECTON and PARKER concur.