STATE OF NORTH CAROLINA v. AARON WILLETTE BAITY

No. 403A93

(Filed 7 April 1995)

**11. Evidence and Witnesses § 3169 (NCI4th)— first-degree murder—prior statement of witness admissible— corroborative**

The trial court did not err in a first-degree murder prosecution by admitting a prior statement by a witness where defendant

STATE v. BAITY

[340 N.C. 65 (1995)]

argued that the prior statement was inconsistent with his testimony on direct examination at trial in that the witness did not testify on direct examination that the victim was carrying a gun when he arrived on the scene and the statement said that the victim was carrying a gun when he appeared in the parking lot. Nothing in his testimony about the gun on direct examination contradicted his previous statement; any variations between the statement and the trial testimony were slight and reflect on the credibility, not the admissibility, of the evidence. Moreover, on cross-examination, the witness testified that the victim was carrying a gun when he arrived in the parking lot; a witness's testimony during cross-examination is a part of a witness's trial testimony and a witness's prior consistent statements may be admitted to corroborate the witness's trial testimony. This statement tended to add weight or credibility to the witness's trial testimony and was admissible to strengthen and confirm the witness's testimony at trial.

**Am Jur 2d, Witnesses §§ 641 et seq.**

2. **Evidence and Witnesses § 2203 (NCI4th)— first-degree murder—fingerprint card—admissible**

The trial court did not err in a first-degree murder prosecution by admitting evidence concerning fingerprints taken from defendant in 1989 where the prosecutor deleted any reference to the date when the fingerprints were taken after defendant objected. The fingerprint card as admitted contained no evidence of any prior criminal arrests, indictments, or convictions. Moreover, there was no prejudicial error in the manner in which the card was admitted, even though defendant contended that there was prejudice in attempting to admit the card with the date, then whiting out the date in the jury's presence.

**Am Jur 2d, Evidence § 569.**

**Fingerprints, palm prints, or bare footprints as evidence. 28 ALR2d 1115.**

3. **Homicide § 244 (NCI4th)— first-degree murder—evidence of premeditation and deliberation—sufficient**

There was sufficient evidence of premeditation and deliberation in a first-degree murder prosecution where, taken in the light most favorable to the State, the evidence established that defendant was walking alongside Cameron Waugh while the victim and

Darren Waugh were walking behind defendant and Cameron; they were going to talk to the police about money defendant had stolen; they had been walking for some time when defendant pulled a pistol, turned around, and shot the victim in the chest; nothing suggests any action on the part of the victim or the Waugh brothers to provoke defendant to start shooting; defendant fled the scene, shooting at the Waugh brothers as he ran; and defendant disposed of the weapon and the clothes he was wearing.

**Am Jur 2d, Homicide §§ 437 et seq.**

**Homicide: presumption of deliberation or premeditation from the circumstances attending the killing. 96 ALR2d 1435.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Cornelius, J., at the 24 May 1993 Criminal Session of Superior Court, Forsyth County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 13 February 1995.

*Michael F. Easley, Attorney General, by John G. Barnwell, Assistant Attorney General, for the State.*

*Lisa S. Costner for defendant-appellant.*

PARKER, Justice.

Defendant was charged in a bill of indictment proper in form with the first-degree murder of Jerry Martin Evans, Jr. (victim) in violation of N.C.G.S. § 14-17. Defendant was tried capitally and convicted as charged. In accordance with the jury's recommendation after a capital sentencing proceeding, the trial court entered judgment sentencing defendant to life imprisonment.

At trial the evidence tended to show that on 11 August 1992, defendant, Aaron Baity, was in the Stratford Oaks shopping center in Winston-Salem. Around 12:15 p.m., defendant entered Decorative Accents, a store in Stratford Oaks. Cathy Disher saw defendant in her office at Decorative Accents and asked if she could help him. Defendant picked up a fabric sample book and began looking through it and asking about green carpet. Not finding what he wanted, defendant left the store. Shortly before 1:00 p.m. on that same day, defendant entered the office of Hines Shoes, another store in Stratford Oaks.

Defendant took money from the safe in the office at Hines Shoes and then left the store. The theft was discovered almost immediately by Darren Waugh, a Hines Shoes' employee. Darren and his brother, Cameron Waugh, who also worked at the store, began pursuing defendant.

The victim worked at a jewelry store located directly across from Hines Shoes in the Stratford Oaks shopping center. The victim heard about the theft and also gave chase.

Darren and Cameron caught up with defendant, and Cameron began to talk to defendant while Darren went to call Hines Shoes and let them know where Darren, Cameron, and defendant were. Cameron remained with defendant as they crossed Stratford Road and went into a Best parking lot. Cameron was trying to persuade defendant to return the stolen money and talk to the police.

Darren and the victim joined Cameron and defendant in the Best parking lot. The victim was carrying a gun. Defendant eventually handed the money he had stolen to Cameron, who gave it to the victim. Cameron, defendant, the victim, and Darren then began walking back towards Stratford Road. Cameron told defendant he would have to talk to the police. Cameron was walking next to defendant; the victim and Darren were walking behind defendant and Cameron. Suddenly, defendant turned around and shot the victim two times in the chest with a nine-millimeter pistol. The victim fell to the ground, and Darren and Cameron both ran for cover. Defendant continued to shoot as he ran away. Darren went back to the victim and got his gun, and Darren and Cameron again began chasing defendant. At some point, Darren threw the gun to Cameron. Neither Darren nor Cameron shot at defendant, and defendant escaped. The police arrived at the scene and questioned Darren, Cameron, and other witnesses about the shooting.

Defendant was arrested later that day by the Special Enforcement Team of the Winston-Salem Police Department. When questioned, defendant claimed he was not at the scene of the shooting and knew nothing about it. The gun used to shoot the victim and the clothes worn by defendant at the time of the murder were never recovered.

The victim died from two gunshot wounds to his chest. An expert in pathology testified at trial that either of the two gunshot wounds alone would have been fatal.

**STATE v. BAITY**

[340 N.C. 65 (1995)]

Defendant elected to testify and presented evidence that he was arrested and sent to prison in 1989 and had been released on 7 January 1992. Defendant testified that on the day of the shooting, he was carrying a nine-millimeter pistol in his pants. Defendant saw the victim in the parking lot at Best; the victim was walking with his hand behind his back. Defendant testified that he turned around to look at the victim and saw the victim "pull a gun from behind his back[,] [r]aise it and hold it with both hands[,] and say I don't think so." Defendant shot the victim because defendant thought the victim would shoot him in the head if he did not shoot the victim first.

Additional facts will be presented as necessary to the understanding of a particular issue.

[1] Defendant first argues that the trial court erred in admitting a prior statement made by witness Cameron Waugh to Officer B.G. Rodden of the Winston-Salem Police Department. Defendant argues that Cameron Waugh's prior statement was inconsistent with, rather than corroborative of, his testimony on direct examination at trial. Specifically, the witness did not testify on direct examination that the victim was carrying a gun when he arrived on the scene; whereas, the witness' statement read into evidence stated that when the victim appeared in the parking lot, he was carrying a gun.

This Court has elaborated on the admissibility of prior consistent statements for corroboration as follows:

> In order to be corroborative and therefore properly admissible, the prior statement of the witness need not merely relate to specific facts brought out in the witness's testimony at trial, so long as the prior statement in fact tends to add weight or credibility to such testimony. *State v. Riddle*, 316 N.C. 152, 156-57, 340 S.E.2d 75, 77-78 (1986); *State v. Higgenbottom*, 312 N.C. 760, 768-69, 324 S.E.2d 834, 840 (1985); *State v. Burns*, 307 N.C. 224, 231, 297 S.E.2d 384, 388 (1982). *See State v. Ollis*, 318 N.C. 370, 348 S.E.2d 777 (1986). Our prior statements are disapproved to the extent that they indicate that additional or "new" information, contained in the witness's prior statement but not referred to in his trial testimony, may never be admitted as corroborative evidence. *Eg.*, *State v. Moore*, 301 N.C. 262, 274, 271 S.E.2d 242, 249-50 (1980); *State v. Brooks*, 260 N.C. 186, 189, 132 S.E.2d 354, 357 (1963). However, the witness's prior statements as to facts not referred to in his trial testimony *and not tending to add weight or credibility* to it are not admissible as corroborative evidence.

Additionally, the witness's prior contradictory statements may not be admitted under the guise of corroborating his testimony.

*State v. Ramey,* 318 N.C. 457, 469, 349 S.E.2d 566, 573-74 (1986).

Applying this analysis, we conclude that the statement at issue in this case tended to add weight or credibility to the trial testimony given by Cameron Waugh and was admissible. The only evidence in Cameron Waugh's statement that defendant argues was inconsistent with Cameron's trial testimony was that portion stating that the victim was carrying a gun. Although Cameron Waugh did not testify during direct examination that the victim was carrying a gun, Cameron never testified on direct examination that the victim was not carrying a gun. On direct examination Cameron testified that his brother, Darren, had a gun that he threw to Cameron after the shooting; but Cameron never testified on direct examination whose gun Darren threw to him. Hence, nothing in Cameron's testimony about the victim's gun on direct examination contradicted his previous statement to Officer Rodden. Moreover, on cross-examination by defendant, Cameron did testify that when the victim arrived in the parking lot, he was carrying a gun in his right hand. Thus, the only inconsistency that defendant argues between Cameron's testimony and his prior statement was in fact part of Cameron's trial testimony.

Defendant argues that Cameron's testimony on cross-examination, that the victim was carrying a gun, only served to confuse the jury. Defendant seems to imply, without citing any authority, that a witness' testimony on cross-examination should not be considered when determining whether a prior statement is consistent with a witness' testimony. We have held that a witness' prior consistent statements may be admitted to corroborate the witness' "trial" testimony. *See State v. McDowell,* 329 N.C. 363, 384, 407 S.E.2d 200, 212 (1991) (admitting a prior statement which strengthens "trial testimony"); *State v. Ramey,* 318 N.C. at 469, 349 S.E.2d at 573 (holding prior statements admissible when they add credibility to "witness's testimony at trial"). A witness' testimony during cross-examination is part of a witness' "trial" testimony. *See State v. Adams,* 331 N.C. 317, 329, 416 S.E.2d 380, 386 (1992) (considering witness' testimony on direct and cross-examination when determining if prior statement was admissible as corroborative evidence).

Based on our review of Cameron Waugh's testimony at trial and his previous statement that was read into evidence by Officer Rodden, we conclude that the statement tended to add weight or

credibility to Cameron's trial testimony and was admissible to strengthen and confirm the witness' testimony at trial. Any variations between the statement to Officer Rodden and Cameron's trial testimony were slight and reflect on the credibility, not the admissibility, of the evidence. The jury was specifically instructed that the evidence was "offered for the purpose of corroborating the testimony of an earlier witness." Accordingly, we find no error in the admission of the statement.

[2] Next, defendant argues that the trial court erred by admitting evidence concerning fingerprints taken from defendant in 1989. Defendant had been fingerprinted in 1989 in connection with a previous arrest. On 11 August 1992, a fingerprint had been lifted from a fabric book at Decorative Accents. When compared with the fingerprint on the 1989 fingerprint card, the lifted fingerprint was identified as defendant's. The prosecutor attempted to admit into evidence the fingerprint card from 1989. Defendant objected. After the prosecutor deleted any reference to the date when the fingerprints were taken, the trial court allowed the card to be admitted.

This Court addressed the admissibility of fingerprint cards made during previous arrests in *State v. Jackson*, 284 N.C. 321, 200 S.E.2d 626 (1973). In *Jackson*, the defendant argued that the trial court erred by admitting into evidence a fingerprint card made in 1962, ten years before the crime at issue had taken place. *Id.* at 331, 200 S.E.2d at 632. The exhibit was introduced for the purpose of identifying a latent fingerprint lifted from the victim's apartment at the time of the crime for which defendant was on trial. *Id.* The defendant argued admission of the fingerprint from 1962 was prejudicial because it was evidence that he had committed an earlier crime. *Id.* at 331, 200 S.E.2d at 632-33.

In *Jackson*, this Court concluded that the fingerprint card as altered prior to its introduction did not disclose the defendant's criminal record and was admissible. *Id.* at 333, 200 S.E.2d at 634. The card as altered did not list a single arrest, indictment, or conviction. *Id.* The Court concluded that the admission of the card did not "prejudicially influence the jury in [its] consideration of the question of defendant's innocence or guilt." *Id.*

Since this Court's decision in *Jackson*, fingerprint cards made pursuant to prior, unrelated arrests have been held admissible. *See State v. McKnight*, 87 N.C. App. 458, 461, 361 S.E.2d 429, 431 (1987), *cert. denied*, 321 N.C. 477, 364 S.E.2d 663 (1988); *State v. Scober*, 74

N.C. App. 469, 472, 328 S.E.2d 590, 591-92 (1985); *State v. Gainey*, 32 N.C. App. 682, 687, 233 S.E.2d 671, 674, *cert. denied*, 292 N.C. 732, 235 S.E.2d 786 (1977).

In the present case, the fingerprint card as admitted contained no evidence of any prior criminal arrests, indictments, or convictions. The card as admitted did not even indicate on what date the fingerprints were taken. While there was testimony that the card was made in 1989, that testimony was objected to, and the jury was specifically instructed to "disregard any testimony of any fingerprints or any incident in 1989." "[T]he law presumes the jury followed the judge's instructions." *State v. Long*, 280 N.C. 633, 641, 187 S.E.2d 47, 52 (1972).

Defendant also argues that prejudicial error occurred when the prosecutor attempted to admit the card into evidence with the date on it and then attempted to remedy the situation by "whiting out" the date, while the jury was present in the courtroom. Defendant objected "to the big show of whiting it [the date] out while we were objecting to it." The discussion and "whiting out" of the date took place during a conference at the bench which the court reporter noted was "out of the hearing of the jury." In response to defendant's objection, the trial court stated that "[t]he jury doesn't know what was whited out. They weren't even watching what you were doing." The prosecutor was instructed by the trial court to delete all reference to the date. The trial court then conducted a *voir dire* of Officer Carl Schulte of the Winston-Salem Police Department, an expert in the field of identification. The trial court made findings of fact that the exhibit contained no information about any prior arrest, indictment, or conviction. The only thing on the card was defendant's fingerprints without a date as to when they were taken. The card was then admitted into evidence.

On this record, we conclude no error occurred in the admission of the card into evidence or in the manner in which the date on the card was deleted from the card.

**[3]** Finally, defendant argues that the trial court erred by denying defendant's motion to dismiss the first-degree murder charge because there was insufficient evidence to show that the killing was premeditated and deliberate.

We have previously set forth the standard for determining a motion to dismiss thusly:

**STATE v. BAITY**

[340 N.C. 65 (1995)]

When a defendant moves for dismissal, the trial court is to determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). Whether evidence presented constitutes substantial evidence is a question of law for the court. *Id.* at 66, 296 S.E.2d at 652. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980). The term "substantial evidence" simply means "that the evidence must be existing and real, not just seeming or imaginary." *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).

*State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). In passing upon a defendant's motion to dismiss, the court must consider the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference. *Id.* at 237, 400 S.E.2d at 61.

Premeditation means that "defendant contemplated killing for some period of time, however short, before he acted." *State v. Williams*, 334 N.C. 440, 447, 434 S.E.2d 588, 592 (1993). Deliberation means that "defendant acted 'in a cool state of blood,' free from any 'violent passion suddenly aroused by some lawful or just cause or legal provocation.' " *Id.* (quoting *State v. Fields*, 315 N.C. 191, 200, 337 S.E.2d 518, 524 (1985)). "Premeditation and deliberation relate to mental processes and ordinarily are not readily susceptible to proof by direct evidence. Instead, they usually must be proved by circumstantial evidence." *State v. Brown*, 315 N.C. 40, 59, 337 S.E.2d 808, 822-23 (1985), *cert. denied*, 476 U.S. 1164, 90 L. Ed. 2d 733 (1986), *rev'd on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988).

Among the circumstances which may be considered as tending to show premeditation and deliberation are: (1) the want of provocation on the part of the victim, (2) the defendant's conduct and statements before and after the killing, (3) threats made against the victim by the defendant, (4) ill will or previous difficulty between the parties, (5) evidence that the killing was done in a brutal manner. *See State v. Calloway*, [305 N.C. 747, 751, 291 S.E.2d 622, 625-26 (1982)]; *State v. Potter*, 295 N.C. 126, [130,] 244 S.E.2d 397[, 401] (1978); *State v. Thomas*, 294 N.C. 105, [119,] 240 S.E.2d 426[, 436] (1978). The nature and number of the victim's wounds is also a circumstance from which an inference of pre-

meditation and deliberation may be drawn, *State v. Brown*, 306
N.C. 151, [174,] 293 S.E.2d 569, [584,] *cert. denied*, 459 U.S. 1080,
103 S.Ct. 503, 74 L.Ed.2d 642 (1982).

*State v. Myers*, 309 N.C. 78, 84, 305 S.E.2d 506, 510 (1983).

In this case, the evidence is sufficient to support a finding of pre-
meditation and deliberation. Taken in the light most favorable to the
State, the evidence established that defendant was walking alongside
Cameron Waugh while the victim and Darren Waugh were walking
behind defendant and Cameron. Cameron, Darren, and the victim
were walking with defendant to take him to talk to the police about
the money he had stolen. The four men had been walking together for
"some length of time" when defendant pulled out his nine-millimeter
pistol, turned around, and shot the victim two times in the chest.
Nothing in the State's evidence suggests any action on the part of the
victim or the Waugh brothers to provoke defendant to start shooting.
Defendant then fled the scene, shooting at Cameron and Darren as he
ran. Defendant disposed of the weapon he used to kill the victim and
the clothes he was wearing when the victim was shot. The clothes and
weapon were never recovered. The victim died from the two gunshot
wounds to the chest. From this evidence a reasonable jury could find
beyond a reasonable doubt that defendant shot the victim with pre-
meditation and deliberation and is guilty of first-degree murder.

Having reviewed the trial transcript and defendant's assignments
of error, we conclude that defendant received a fair trial free of prej-
udicial error.

NO ERROR.