HUNTER, Judge.
A jury found defendant guilty of discharging a firearm into an occupied vehicle and assault with a deadly weapon. The trial court consolidated the two offenses for judgment and sentenced him to an active prison term of thirty-four to fifty months. Defendant filed timely notice of appeal.
The State's evidence tended to show that April Denise Miller ("Miller") went to defendant's house to dry some clothes at 7:00 p.m. on 2 September 2002. Miller, who had been dating defendant for approximately six months at the time, brought her four children with her. More than twenty people were at defendant's residence when she arrived. Defendant and Rodney Maddix ("Maddix") wereinside "playing cards and drinking[.]" While she and her children were waiting for the clothes to dry, Maddix suggested that he and defendant "go fight the dogs." Defendant declined and stayed in the house while Maddix went outside, where his dog was subsequently killed in a dog fight. When Maddix came back inside threatening to "go[] home [and] get his gun[,]" defendant asked him to leave. Defendant then told Miller to leave with her children, because he did not "know what[] [was] getting ready to jump off."
As defendant and Miller were talking, Maddix telephoned and had a conversation with defendant. Defendant became "very upset" and "was saying that [Miller] had told [Maddix] something." Believing that alcohol "had a lot to do with" defendant's distress, Miller told him, "[w]ell, you-all are drinking, let's talk about this another day." Defendant walked out with Miller as she gathered her children into the van, but returned to the house when his phone rang. As Miller was preparing to leave, defendant came back outside and approached her van. Visibly angry, he said something to Miller in a "raised" voice and punched out her van's driver's side window. As defendant raised his arm to strike the blow, Miller saw "a handgun tucked down his pants." Miller hurriedly put the van in reverse, and was backing into the road when she saw "a lot of gunshots" coming from defendant's direction in the front of the house and "from the side of the house also." When Miller arrived at a stop sign, she saw that her eight-year-old daughter, Jasmine, had been shot in the left side of her abdomen. Miller drove to Earl Depot and called paramedics, who took herdaughter to the hospital. Miller remained "good friends" with defendant following the episode. Although they never discussed the shooting, defendant told Miller that "if he did it he's sorry." Miller did not see anyone else with a gun at defendant's house on the night in question.
At 10:45 p.m. on 2 September 2002, Cleveland County Sheriff's Detective Gary Hogue was paged by his sergeant and responded to the report of a shooting at 2814 Bettis Road. Hogue first went to Earl Depot and examined Miller's van, which had a "flat tire on it, a busted out window, and what appeared to be . . . a shattered window right behind the driver's side window on the left side." Hogue then proceeded to 2814 Bettis Road, where he located a cluster of five nine-millimeter shell casings in the driveway. He also found clear shattered glass both on the driveway next to the residence and "in the roadway just off of the driveway." Hogue conducted "a walk of the yard" and found a dead dog behind the residence, but did not find any additional shell casings or evidence.
After leaving Bettis Road, Hogue spoke with Miller at Cleveland Regional Medical Center. Miller told Hogue that defendant "shot at the vehicle" as she was backing out of the driveway.
In his first argument on appeal, defendant claims the trial court erred in allowing Hogue to testify regarding Miller's out-of-court statement that defendant shot at her vehicle while she was backing out of his driveway. While acknowledging that a witness' prior consistent statement is admissible for corroborativepurposes, defendant contends that Miller's statement to Hogue actually contradicted her trial testimony and was erroneously admitted under the guise of corroborative evidence.
Under North Carolina law, "a witness' prior consistent statements may be admitted to corroborate the witness' `trial' testimony." State v. Baity, 340 N.C. 65, 70, 455 S.E.2d 621, 624-25 (1995) (citing State v. McDowell, 329 N.C. 363, 384, 407 S.E.2d 200, 212 (1991)). Such evidence is corroborative if it "tends to strengthen, confirm, or make more certain the testimony of [the] witness." State v. Rogers, 299 N.C. 597, 601, 264 S.E.2d 89, 92 (1980). Where there is some variance between the witness' trial testimony and the prior statement, the standard for admissibility is as follows:
In order to be corroborative and therefore properly admissible, the prior statement of the witness need not merely relate to specific facts brought out in the witness's testimony at trial, so long as the prior statement in fact tends to add weight or credibility to such testimony. . . . However, the witness's prior statements as to facts not referred to in his trial testimony and not tending to add weight or credibility to it are not admissible as corroborative evidence. Additionally, the witness's prior contradictory statements may not be admitted under the guise of corroborating his testimony.
State v. Ramey, 318 N.C. 457, 469, 349 S.E.2d 566, 573-74 (1986) (citations omitted) (emphasis omitted) (footnote omitted). Within these general guidelines, the trial judge enjoys "wide latitude in deciding when a prior consistent statement can be admitted forcorroborative, nonhearsay purposes." State v. Call, 349 N.C. 382, 410, 508 S.E.2d 496, 513 (1998).
In State v. Lloyd, 354 N.C. 76, 552 S.E.2d 596 (2001), a prosecution witness, Jovanta, testified regarding the shooting of his mother "that he heard defendant and [his mother] arguing, heard shots, saw [her] bleeding and lying on the porch, and saw defendant fleeing the crime scene." Lloyd, 354 N.C. at 104, 552 S.E.2d at 617. Defendant argued on appeal that the trial court erred in allowing into evidence Jovanta's out-of-court statement to police that defendant "`shot my mama.'" Noting "the detail given in Jovanta's testimony," the Lloyd court concluded that "his comment that `[defendant] shot my mama' is an admissible shorthand statement of fact." Id. at 104, 552 S.E.2d at 617 (citing State v. Williamson, 333 N.C. 128, 136, 423 S.E.2d 766, 770 (1992)); State v. Spaulding, 288 N.C. 397, 411, 219 S.E.2d 178, 187 (1975), death sentence vacated, 428 U.S. 904, 49 L. Ed. 2d 1210 (1976)). The court further ruled admissible Jovanta's prior statement that he thought he heard three gunshots, which differed from his trial testimony that he heard two shots. The court found that the prior account "is not an explicit contradiction to his trial testimony that he heard two shots, and . . . it corroborates his trial testimony that he did hear shots." Lloyd, 354 N.C. at 105, 552 S.E.2d at 618.
We find Miller's prior statement to Hogue to be consistent with her trial testimony and, therefore, admissible for corroborative purposes. Miller testified that defendant came outto her van with a handgun, and was so angry that he smashed her window with his fist while saying something to her in a "raised" voice. Miller further affirmed that, as she attempted to drive away, she saw gunshots "come from the direction of [defendant]." When she reached the end of the street, Miller noticed that Jasmine had been shot. Miller also testified that defendant later told her that "if he did it he's sorry." Nothing in her out-of-court statement that defendant "shot at the vehicle" contradicted her trial testimony. As in Lloyd, Miller's statement to the detective at the hospital was a "shorthand statement of fact" reasonably drawn from her observations at defendant's residence, as detailed in her trial testimony. Lloyd, 354 N.C. at 104, 552 S.E.2d at 617. Contrary to defendant's assertion, Miller's statement to the detective on the night of the shooting in no way contradicted her trial testimony. Miller did not testify that defendant did not fire his gun, that he fired it in a direction other than at her van, or that she saw someone other than defendant fire the shots at her van. See generally Baity, 340 N.C. at 70, 455 S.E.2d at 625. Although Miller testified that she saw additional gunshots coming from the side of the house, she did not testify that she did not see who shot at her van. See State v. Francis, 343 N.C. 436, 439, 471 S.E.2d 348, 350 (1996). Accordingly, we overrule this assignment of error.
Defendant next claims the admission of Miller's hearsay statement to Hogue "constituted reversible error in that there was a reasonable possibility that a different result would have beenreached had the pretrial statement not been admitted." Because the admission of the statement was not error, however, this Court need not assess its potential prejudicial impact under the standard of N.C. Gen. Stat. § 15A-1443 (2003). Defendant makes no argument that this otherwise admissible evidence was unduly prejudicial under N.C.R. Evid. 403, such that its admission was an abuse of the trial court's discretion. To the extent defendant claims the court's error "was compounded by the fact that no limiting instruction as to corroborative testimony was given[,]" we note that defendant did not request any limiting instruction at trial. See State v. Joyce, 97 N.C. App. 464, 470, 389 S.E.2d 136, 140 (citing State v. Lankford, 31 N.C. App. 13, 228 S.E.2d 641 (1976)), disc. review denied, 326 N.C. 803, 393 S.E.2d 902 (1990). Nor has defendant assigned error, or plain error, to the court's failure to give such an instruction. N.C.R. App. P. 10(a), (c). Moreover, defendant expressly declined the trial court's proposal to give the pattern jury instruction on "Impeachment or Corroboration by Prior Statement" during the charge conference, see 1 N.C.P.I. Crim. 105.20 (Supp. Mar. 1986), and raised no objection to the court's jury instructions as given. See N.C.R. App. P. 10(b)(2).
In his final argument on appeal, defendant avers the trial court erred in denying his motion to dismiss, absent evidence establishing his identity as the person who fired upon Miller's van. In reviewing the denial of a motion to dismiss, we must examine the evidence in the light most favorable to the State to determine if there is substantial evidence of each essentialelement of the offense charged and of defendant's identity as the perpetrator. See State v. Jacobs, 128 N.C. App. 559, 563, 495 S.E.2d 757, 760-61, disc. review denied, 348 N.C. 506, 510 S.E.2d 665 (1998). Our courts have defined "substantial evidence" as evidence that would permit a reasonable juror to find a fact at issue beyond a reasonable doubt. See State v. Etheridge, 319 N.C. 34, 47, 352 S.E.2d 673, 681 (1987). Such evidence "`need not exclude every reasonable hypothesis of innocence in order to support the denial of a defendant's motion to dismiss.'" Jacobs, 128 N.C. App. at 563, 495 S.E.2d at 761 (quoting State v. Parks, 96 N.C. App. 589, 594, 386 S.E.2d 748, 751 (1989)).
A person is guilty of discharging a firearm into an occupied vehicle if he "intentionally, without legal justification or excuse, discharges a firearm into an occupied [vehicle] with knowledge that the [vehicle] is then occupied by one or more persons or when he has reasonable grounds to believe that the [vehicle] might be occupied by one or more persons." State v. Williams, 284 N.C. 67, 73, 199 S.E.2d 409, 412 (1973) (emphasis omitted). Because specific intent is not an element of this offense, see State v. Jones, 339 N.C. 114, 148, 451 S.E.2d 826, 844 (1994) (citing State v. Wheeler, 321 N.C. 725, 365 S.E.2d 609 (1988)), cert. denied, 515 U.S. 1169, 132 L. Ed. 2d 873 (1995), the State was required to prove only that defendant (1) intentionally fired his gun at Miller's van knowing it was occupied, or intentionally fired at Miller, and (2) that one or more bullets entered the occupied van. State v. Byrd, 132 N.C. App. 220, 222,510 S.E.2d 410, 412, disc. review denied, 350 N.C. 596, 537 S.E.2d 484 (1999).
We find the State's evidence sufficient to withstand defendant's motion to dismiss. Miller testified that defendant became "very upset" with her just before the shooting, because Maddix "was saying that [she] had told [Maddix] something." Defendant's distress at Miller was fueled by his consumption of alcohol, which appeared to Miller to have "a lot to do with" his emotional state. After receiving a second phone call, an angry defendant came out to his driveway with a handgun, said something to Miller in a loud voice, and shattered her van's window with his hand. As Miller backed out of defendant's driveway onto the street, she saw gunshots coming from his direction. When she arrived at a stop sign, she discovered that Jasmine was hit with a bullet. Defendant later told Miller that "if he did it he's sorry." Police found a group of five nine-millimeter shell casings on the driveway. Moreover, although Miller testified that she also saw gunshots coming from the side of the house, she did not see anyone else with a gun; and police found no gun, shell casings, or other evidence of gunfire anywhere else in defendant's yard. Viewed in their totality and in the light most favorable to the State, these circumstances support a reasonable inference that defendant fired the shot that entered Miller's vehicle.
Evidence that defendant fired his handgun in the direction of the van and injured Jasmine with a bullet also supports the jury's guilty verdict on the charge of assault with a deadly weapon,irrespective of his precise intentions. See State v. Newton, 251 N.C. 151, 155, 110 S.E.2d 810, 813 (1959) ("[d]efendant's guilt does not depend upon whether, before firing his [gun], he took precise aim at the [van] or any occupant thereof. `It is an assault, without regard to the aggressor's intention, to fire a gun at another or in the direction in which he is standing'") (citation omitted); see also State v. Messick, 88 N.C. App. 428, 435, 363 S.E.2d 657, 661, cert. denied, 323 N.C. 368, 373 S.E.2d 553 (1988) ("[d]efendant's ignorance regarding the number of occupants in the car was immaterial since his actions were sufficient to constitute an assault with a deadly weapon on both occupants").
The record on appeal contains additional assignments of error not addressed in defendant's brief to this Court. Pursuant to N.C.R. App. P. 28(b)(6), we deem them abandoned.
No error.
Judges ELMORE and STEELMAN concur.
Report per Rule 30(e).