STATE OF NORTH CAROLINA v. JIMMY RAY O'BRIANT

No. 7810SC552

(Filed 16 October 1979)

**1. Assault and Battery § 4— two methods of assault**

In this State a criminal assault may be accomplished either by an overt act on the part of the accused evidencing an intentional offer or attempt by force and violence to do injury to the person of another or by the "show of violence" on the part of the accused sufficient to cause a reasonable apprehension of immediate bodily harm on the part of the person assailed which causes him to engage in a course of conduct which he would not otherwise have followed.

**2. Assault and Battery § 14.2— assault with deadly weapon—"show of violence" rule**

The State's evidence was sufficient to sustain a verdict of guilty of assault with a deadly weapon under the "show of violence" rule where it tended to show that defendant, armed with a loaded shotgun, went searching for his estranged wife with the avowed intent to "blow her head off"; when he saw her walking along a public road, he stopped his car, picked up the shotgun, and thrust the barrel of the gun out of the car window; the shotgun was fired; and defendant's wife fled across the road to seek the shelter of a nearby store, it being immaterial that the shotgun may never have been actually pointed at defendant's wife, that the pellets may not have traveled in her direction or whether the gun was fired at all.

APPEAL by defendant from *Preston, Judge.* Judgment entered 23 January 1978. Heard in the Court of Appeals 17 October 1978.

Defendant was indicted for feloniously assaulting Nina O'Briant "with a certain deadly weapon, to wit: a double-barrel shot gun with the felonious intent to kill and murder the said Nina O'Briant inflicting serious injury." At trial the State elected to proceed only on a charge of assault with a deadly weapon with intent to kill. Defendant pled not guilty.

The State's evidence tended to show: Defendant and Nina O'Briant were formerly married but had been separated about three and one-half years. Defendant lived in Angier, and Nina O'Briant lived in Raleigh. On the afternoon of 11 June 1977, defendant appeared at the doorway of Nina O'Briant's home carrying a double-barrel shot gun and wanting to know where she was. When an occupant of the house told him that he had no idea where Nina O'Briant was, defendant said "something about papers, something about child support," and said "he was going to find Mrs. O'Briant and blow her head off." Defendant placed the shotgun in the back seat of a green Pontiac and drove away. He was accompanied by a Miss Frances Dunn, who was seated next to him in the car.

Nina O'Briant testified that on the afternoon of 11 June 1977 she was at the corner of Winton and New Hope Church Roads, a few blocks from her home in Raleigh. As she walked on the left-hand side of the road, a car came up from behind and stopped on the right-hand side of the road about thirty-five feet from her. She heard someone scream and turned around to see who or what it was. She saw a green Pontiac, and as she stepped toward it she saw a gun barrel come out of the window on the left hand or driver's side of the car, being the side closest to her. She recognized the gun as a shotgun. She heard someone scream, "Nina Lou, run," and saw Miss Dunn "with her head out the left-hand side of the car window." She turned to run and "had taken maybe one step" when she heard a shot. No pellets struck her, and she did not see in what direction the gun was fired. She ran across the street into a grocery store and asked them to call the police. She testified that when she heard the gun, she was terrified.

R. H. Westbrook, a passing motorist, testified for the State that he heard the shot and then "saw Miss O'Briant run across the road just as fast as anybody I seen run in a long time." He also testified that he saw a cloud of dust on the right-hand side of the road, being the same side of the road that the Pontiac was sitting on; that he did a lot of hunting and so knew what the shot pattern made by a shotgun looked like; and that that is what the dust pattern looked like to him.

Defendant did not testify. Frances Dunn testified for the defendant as follows:

I was with the defendant on the 11th of June, 1977. On that day I saw Nina O'Briant. We were coming down New Hope Church Road across the train track by Corning Glass and he stopped the car about twenty feet from the train track. I wondered why he stopped the car and I looked down and I saw Miss O'Briant going down the street, on the left side of the highway. He reached down to pick up the gun. I was in the front seat and when he did, I grabbed the gun away from him and screamed for him to leave the gun alone and was up on top trying to get the gun to put it back in the backseat, and when I did the gun went off in the car, knocked me back against the seat of the car and I had a bruise up under my chin. I grabbed the gun, then he grabbed it. We were sort of struggling for it. I was laying on the gun when the gun went off. I was up in his lap.

. . . The gun was mostly on Mr. O'Briant and on the window. It shot out the window. If it hadn't, it probably would have killed me or him. It was pointed out the driver's side of the window. We had been at Nina's house earlier and he went in the house with the shotgun. He had gone to see his son. He was mad about some letter from the court. He came back outside in just a few minutes. . . . I never heard him say that he was going to blow Nina's brains out. This is the first time I have heard about that and I was standing there . . . . I saw Nina on the street after the gun went off. I don't know if she was running. We were a hundred and fifty yards from where she was walking at the time the gun discharged. I never hollered at her to run . . . . The gun went off and here I was, knocked back against the car. We were not closer than a hundred and fifty yards. I can't say that I pulled the trig-

ger. I might have. We were both struggling for it. I had my hands down there where the trigger was and when you are struggling with something, you don't know. I might have shot it. I don't know.

The jury found defendant guilty of assault with a deadly weapon. From judgment on the verdict sentencing him to prison for a term of 12 months, defendant appealed.

*Attorney General Edmisten by Associate Attorney Jane Rankin Thompson for the State.*

*Purser and Barrett by George R. Barrett for defendant appellant.*

PARKER, Judge.

Appellant's sole contention is that the court erred in entering judgment against him because as a matter of law the evidence was insufficient to sustain the verdict. We do not agree.

At the outset we note that the appellant is entitled to present for appellate review the question of whether the evidence was sufficient as a matter of law to sustain the verdict even though at trial he failed to renew at the close of all of the evidence the motion for nonsuit which he made at the close of the State's evidence. G.S. 15A-1446(d)(5), which replaced former G.S. 15-173.1, expressly so provides, and the contention to the contrary in the State's brief is not sustained.

[1] Viewing the evidence in the light most favorable to the State, we find it sufficient to sustain the verdict. In this State a criminal assault may be accomplished either by an overt act on the part of the accused evidencing an intentional offer or attempt by force and violence to do injury to the person of another or by the "show of violence" on the part of the accused sufficient to cause a reasonable apprehension of immediate bodily harm on the part of the person assailed which causes him to engage in a course of conduct which he would not otherwise have followed. *State v. Roberts,* 270 N.C. 655, 155 S.E. 2d 303 (1967); *State v. Lassiter,* 18 N.C. App. 208, 196 S.E. 2d 592 (1973); *State v. Hill,* 6 N.C. App. 365, 170 S.E. 2d 99 (1969). Thus, in North Carolina, there are two rules, either or both of which may be applied in prosecuting a person accused of an assault. The first places em-

phasis on the intent or state of mind of the person accused. Under the second, which is sometimes referred to as the "show of violence" rule, emphasis is shifted to a consideration of the apprehension of the person assailed and the reasonableness of that apprehension. *State v. Roberts, supra; See* Note, *"Show of Violence" Rule in North Carolina*, 36 N.C.L. Rev. 198 (1958). While the evidence in the present case would probably support a jury verdict finding defendant guilty of assault with a deadly weapon no matter which of the above rules is applied, *see State v. Sawyer*, 29 N.C. App. 505, 225 S.E. 2d 328 (1976), we find it unnecessary so to decide. In our opinion the evidence was clearly sufficient under the second, or "show of violence," rule.

[2] The evidence in this case, when viewed in the light most favorable to the State, would support a jury finding that defendant, armed with a loaded shotgun, went searching for his estranged wife with the avowed intent to "blow her head off;" while so engaged he came upon her while she was walking along a public road; on seeing her, he stopped the automobile in which he was driving, picked up the shotgun, and thrust the barrel of the gun out of the car window; the shotgun was fired, and defendant's wife, in reasonable apprehension for her safety, fled across the road to seek the shelter of a nearby store. On these facts, defendant would be guilty of committing an assault with a deadly weapon, a misdemeanor under G.S. 14-33(b)(1) which is a lesser included offense of the felony charged in the bill of indictment. It is immaterial that the shotgun may never have been actually pointed at defendant's wife or that when discharged the pellets may not have traveled in her direction. It is even immaterial whether the gun was fired at all. Under the circumstances disclosed by the evidence in this case, the assault with use of a deadly weapon was complete when defendant thrust the barrel of the shotgun out of the car window. On this evidence a rational finder of the facts could reasonably have found defendant guilty beyond a reasonable doubt of the offense of which the jury found him guilty. *See, Jackson v. Virginia*, --- U.S. ---, 61 L.Ed. 2d 560, 99 S.Ct. 2781 (1979).

Appellant did not except to any portion of the court's charge to the jury. As above noted, his sole contention is that the evidence was insufficient to support the verdict.

We find

No error.

Judges MARTIN (Robert M.) and MARTIN (Harry C.) concur.