STATE OF NORTH CAROLINA v. CARLES C. MESSICK

No. 8730SC588

(Filed 19 January 1988)

1. **Constitutional Law § 45— defendant's right to represent self—understanding of charges and punishment**

    The trial court did not err in allowing defendant to represent himself, and the record showed a knowing and intelligent waiver of the right to counsel where defendant signed a written waiver of his right to counsel; he attempted to appoint as counsel a person not licensed to practice law in this or any other state; the judge at a pretrial hearing informed defendant of his right, whereupon defendant stated that he waived counsel, wished to act in his own defense, and understood the nature of the charges against him and the possible sentences; the judge agreed to let defendant's non-lawyer friend sit beside him and assist him as he represented himself, but the friend could not address the court or speak on defendant's behalf; defendant moved for a continuance which was granted; when the case came on for trial, the judge refused to allow the friend to sit with defendant and advise him on the case; the judge informed defendant again of his right to a court-appointed lawyer, which defendant declined; defendant indicated again that he comprehended the nature of the charges and the range of possible punishments; and the judge was not required to make a *de novo* determination of whether defendant wished to have the assistance of counsel.

2. **Criminal Law § 169.3— evidence excluded—similar evidence subsequently admitted—defendant not prejudiced**

    In a prosecution of defendant for discharging a firearm into an occupied vehicle and assault with a deadly weapon where defendant contended that he shot at his victims because he thought they were going to bomb his church, defendant was not prejudiced by the trial court's exclusion of evidence concerning prior acts of violence against the church, since defendant testified on cross-examination that the church had put in an alarm system because of another attempted bombing incident, and he testified that the church had been firebombed in the past.

3. **Assault and Battery § 14.2— two people in car—two counts of assault with deadly weapon—defendant's knowledge as to number of people in car irrelevant**

    Where defendant was charged with discharging a firearm into an occupied vehicle and with two counts of assault with a deadly weapon, there was no merit to defendant's contention that the trial court erred in failing to dismiss one of the two assault charges because defendant was unaware that there were two people in the car upon which he fired with a semi-automatic rifle.

4. **Assault and Battery § 5.3; Weapons and Firearms § 1— discharging firearm into occupied vehicle—assault with deadly weapon—conviction for both not double jeopardy**

> Defendant was not placed in double jeopardy by convictions for discharging a firearm into an occupied vehicle and assault with a deadly weapon where both offenses arose from the same incident, since each offense included an element not common to the other.

APPEAL by defendant from *Allen (C. Walter), Judge*. Judgments entered 17 December 1986 in Superior Court, MACON County. Heard in the Court of Appeals 8 December 1987.

Defendant was charged in a proper bill of indictment with discharging a firearm into an occupied vehicle in violation of G.S. 14-34.1. He was also charged by warrant with two counts of assault with a deadly weapon in violation of G.S. 14-33(b)(1).

The State's evidence tended to show the following facts. On 14 June 1986 at approximately 2:30 a.m., William Trusty and his wife Patricia Trusty drove on Klassen Road to see a friend, Raleigh Lentz, about borrowing money. Lentz had loaned William Trusty money in the past. The Trustys drove up to the Lentz house but turned around when they noticed a different name on the lamppost, indicating that the Lentzes no longer lived there. They drove back down Klassen Road and stopped near a light in front of the Church of the Creator in order to mix a drink. Patricia Trusty was driving and William Trusty was drinking. As William Trusty was mixing a drink, shots started hitting the car. Patricia Trusty immediately drove off, and the Trustys returned to their home across the state line in Dillard, Georgia. They called the Rayburn County, Georgia Sheriff's Department to report the shooting. The Trustys' car had been hit in the headlights, the radiator, the front of the motor, the windows, the tires and the passenger side of the car. On cross-examination, William Trusty stated that he was not familiar with defendant's church at the time of the shooting but knew that it was a white supremacy church.

Deputy Charles Doster of the Macon County Sheriff's Department testified that he went to the Church of the Creator in the early morning hours of 14 June in response to a report that shots had been fired. Another officer had previously arrived on the scene but had left to track the Trusty car. When the deputy ar-

rived at the church, defendant came out of the church wearing full camouflage clothing and holding an AR-15 semiautomatic rifle over his head. Defendant told the deputy that he had observed a car proceed to the end of Klassen Road, turn around and drive back to the church where it stopped under the light. Defendant told the deputy that he fired at the car "strictly to attempt to disable the vehicle." Defendant had fired 29 rounds of ammunition at the car.

Defendant, appearing *pro se*, presented evidence tending to show the following:

Deputy Keith Doster of the Macon County Sheriff's Department testified that he had received a call about a possible bombing of the church and was the first officer on the scene. Defendant told Keith Doster that when he was sleeping on the balcony, he heard voices threatening to blow up the church. Defendant then grabbed his rifle and went down to the edge of the road to see who was speaking. He found no one. Then a car turned into Klassen Road, turned around and stopped in front of the church. Defendant told the deputy that he fired the shots in order to stop the car.

Defendant testified that he was sleeping nude on the balcony and heard voices threatening to blow up the church. He stated that those voices said, "If that bald-headed dude comes out, we'll take care of him too." Defendant attempted to call the sheriff's department but was unable to contact them. He then called Ben Klassen's residence and informed Mrs. Klassen that prowlers were threatening to bomb the church and to kill him. He told Mrs. Klassen to call the sheriff's department. Defendant dressed, grabbed his rifle, left the church and proceeded to the road. A car turned into Klassen Road and defendant lay in a ditch. The car turned around at what had once been the Lentz house and stopped in front of the church. Defendant noticed a flash of light in the car which was "like somebody lighting a match or a cigarette lighter." Defendant testified that the church had been bombed in the past and that he was "practically positive that somebody was lighting a gasoline bomb or a stick of dynamite or something." At that time, Ben Klassen drove to the church and as his car approached the stopped car, the stopped car drove off at a high rate of speed. Defendant testified that he stepped out, fired

a warning shot or two and then fired at the vehicle in order to stop it. Defendant heard a woman scream as the car drove off. Defendant stated that he later found out that he knew Patricia Trusty because he frequented the video rental store where she worked.

The jury found defendant guilty of discharging a firearm into an occupied vehicle and of two counts of assault with a deadly weapon. He was sentenced to consecutive prison terms totaling seven years. From the judgment of the trial court, defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Wilson Hayman, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Geoffrey C. Mangum, for defendant appellant.*

ARNOLD, Judge.

[1] In his first assignment of error, defendant contends that the trial court erred in allowing him to represent himself at trial because the record fails to show a knowing and intelligent waiver of the right to counsel.

> A criminal defendant has a constitutional right to the assistance of competent counsel in his defense. *Gideon v. Wainwright*, 372 U.S. 335 (1963). Implicit in defendant's constitutional right to counsel is the right to refuse the assistance of counsel and conduct his own defense. *Faretta v. California*, 422 U.S. 806 (1975). In its decisions both prior to and after *Faretta*, this court has held that counsel may not be forced on an unwilling defendant. *State v. Thacker*, 301 N.C. 348, 271 S.E. 2d 252 (1980); *State v. McNeil*, 263 N.C. 260, 139 S.E. 2d 667 (1975).

*State v. Gerald*, 304 N.C. 511, 516, 284 S.E. 2d 312, 316 (1981). G.S. 15A-1242 states:

> A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that the defendant:

(1) Has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;

(2) Understands and appreciates the consequences of this decision; and

(3) Comprehends the nature of the charges and proceedings and the range of permissible punishments.

On 8 July 1986, defendant signed a written waiver of his right to counsel which was certified by Judge Robert Leatherwood. On 16 July 1986, defendant filed a *pro se* motion in which he refused because of his religious beliefs "to employ or accept any licensed or other privileged person beholden to his adversary or recognizing the State of North Carolina as his/her Sovereign, to become involved in any manner or degree with making my own defense to these alleged criminal charges by the State." Defendant simultaneously filed a notice of appointment of counsel by which he purported to appoint Mr. Don R. Johnson, not licensed to practice law in North Carolina or any other state, as counsel.

On 27 October 1986, a pretrial hearing was held before Judge Lamar Gudger. Judge Gudger informed defendant of his right to counsel, and defendant stated that he waived counsel and wished to act in his own defense. Defendant also indicated that he understood the nature of the charges against him and the possible maximum sentences. Judge Gudger again informed defendant of his right to counsel, and defendant stated that he did not desire to have a licensed attorney or a court-appointed attorney represent him. When defendant stated that he desired Mr. Johnson, the "legal counsel" for his church, to act in his defense, the court informed defendant that although he could have Johnson sit beside him and assist him as he represented himself *pro se*, Johnson would not be permitted to address the court or speak on defendant's behalf. Judge Gudger again advised defendant of the charges against him and the maximum penalties for the offenses and defendant stated that he understood them. Judge Gudger also told defendant that another judge might try defendant's case and could order something different with respect to Johnson's assistance.

Defendant requested a continuance and on 15 December 1986, defendant's case came on for trial before Judge Allen. The following exchanges occurred:

MR. MESSICK: Another motion that was sort of semi-granted was a motion for non-bar counsel. He was permitting me to have assistance of counsel, my own counsel, a non-bar attorney—a non-bar counsel. But I wanted to point out that he has forbidded (sic) him to address the jury or Court.

THE COURT: I am going to forbid him also from being seated next to you.

MR. MESSICK: I'm going to take exception to that, Your Honor.

THE COURT: Yes, sir. He can sit behind you but he cannot sit at counsel table.

MR. MESSICK: Well, without the assistance of Mr. Johnson, Your Honor, I am really not qualified to—

THE COURT: I'm not saying that you can't have his assistance. I'm saying that he cannot sit with you at counsel table. He can be seated immediately behind you.

MR. MESSICK: Will I be allowed to confer with him?

THE COURT: We will have to take that up as it comes up. That is a violation of the law, Mr. Messick for anyone to advise on matters of law in this State who is not an attorney and I cannot allow that, knowingly allow it—

MR. MESSICK: Judge Gudger didn't have any problem with it—

THE COURT: Well, I cannot allow—I cannot not (sic) knowingly allow a violation of the law to take place in the courtroom, no, sir. You can have anyone seated behind you care to. Now whether he advises you or not, is your business, but I am not allowing a non-attorney to sit at counsel table with you.

\*      \*      \*      \*

THE COURT: I understand that. The State has offered a lawyer to you, Mr. Messick and I understand that you didn't desire one.

MR. MESSICK: That's true, Your Honor.

\*   \*   \*   \*

THE COURT: [Y]ou do not wish to have a Court appointed counsel at this time?

MR. MESSICK: Yes, Your Honor that is right.

THE COURT: You are going to represent yourself?

MR. MESSICK: I am going to defend myself.

Defendant argues that he never voluntarily and knowingly waived his right to counsel once Judge Allen informed him that he could not have the assistance of Mr. Johnson at counsel table. He asserts that Judge Allen was obligated to make a *de novo* determination of whether defendant wished to have the assistance of counsel. We do not agree.

Judge Allen's limitations on Mr. Johnson's "assistance" did not necessitate a *de novo* inquiry into defendant's waiver of counsel. The trial court advised defendant of his right to the assistance of counsel and defendant clearly indicated that he comprehended the nature of the charges and the range of possible punishments. The record is replete with defendant's assertions that he wished to defend himself and that he understood the consequences of his decision. The trial court correctly followed G.S. 15A-1242, and defendant voluntarily and knowingly waived his right to counsel.

[2] Defendant next contends that "the trial court erred in sustaining the State's objections to defendant's questions to show prior acts of violence against the church, because such testimony was relevant to whether defendant had probable cause to suspect the Trustys of having attempted to bomb the church so that he was authorized to detain them." This contention is without merit.

On cross-examination, defendant testified that the church put in an alarm system because of another attempted bombing incident. He also testified that the church had been fire bombed in the past.

It is well settled that no prejudice arises from the erroneous exclusion of evidence when the same or substantially the same testimony is subsequently admitted into evidence. *State v. Hageman*, 307 N.C. 1, 296 S.E. 2d 433 (1982). Even assuming *arguendo* that the evidence was improperly excluded, any possible prejudice was cured by the admission of defendant's testimony.

[3] Defendant also contends that "the trial court erred in failing to dismiss one of the two assault charges, because the evidence was insufficient in that the State failed to prove defendant was aware two people were in the car." We do not agree.

There is no statutory definition of assault in North Carolina, and the crime of assault is governed by common law rules. *State v. Roberts*, 270 N.C. 655, 155 S.E. 2d 303 (1967).

> In this State a criminal assault may be accomplished either by an overt act on the part of the accused evidencing an intentional offer or attempt by force and violence to do injury to the person of another or by the "show of violence" on the part of the accused sufficient to cause a reasonable apprehension of immediate bodily harm on the part of the person assailed which causes him to engage in a course of conduct which he would not otherwise have followed.

*State v. O'Briant*, 43 N.C. App. 341, 344, 258 S.E. 2d 839, 841-42 (1979). A criminal assault may be proven under the "show of violence" rule by evidence of the apprehension of harm on the part of the person or persons assailed. *Id.* Intent is not a prescribed element of assault with a deadly weapon. *State v. Curie*, 19 N.C. App. 17, 198 S.E. 2d 28 (1973).

In the present case, defendant's "show of violence" placed William and Patricia Trusty in fear of immediate harm. Defendant's ignorance regarding the number of occupants in the car was immaterial since his actions were sufficient to constitute an assault with a deadly weapon on both occupants. The trial court properly refused to dismiss one of the assault charges.

[4] Defendant finally contends that "the trial court erred in denying defendant's motion to dismiss assault charges and the charge of discharging a firearm into occupied property as multiplicitous, because double conviction and punishment for these of-

fenses violates double jeopardy." This contention is without merit.

The Double Jeopardy Clause of the North Carolina and United States Constitutions protect against multiple punishments for the same offense. *State v. Gardner*, 315 N.C. 444, 340 S.E. 2d 701 (1986).

> [T]he general rule in North Carolina for determining whether certain crimes are separate and distinct offenses is based on *Blockburger v. U.S.*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The rule states that in order to show separate and distinct offenses, there must be proof of an additional fact required for each conviction. It is not enough to show that one crime requires proof of a fact that the other does not. Each offense must include an element not common to the other (citations omitted).

*State v. Strohauer*, 84 N.C. App. 68, 72-73, 351 S.E. 2d 823, 827 (1987).

Discharging a firearm into an occupied vehicle and assault with a deadly weapon are separate and distinct offenses. In *State v. Shook*, 293 N.C. 315, 237 S.E. 2d 843 (1977), defendant was convicted of discharging a firearm into an occupied building and assault with a deadly weapon inflicting serious injury. Our Supreme Court held that defendant was not exposed to double jeopardy and stated:

> To prove [discharging a firearm into an occupied building], the state must show that defendant fired into an occupied building, an element which need not be shown to support the second charge. Likewise to prove [assault with a deadly weapon inflicting serious injury], it must show the infliction of serious injury, which is not an element of the first charge.

*Id.* at 320, 237 S.E. 2d at 847.

In *State v. Bland*, 34 N.C. App. 384, 238 S.E. 2d 199 (1977), *disc. rev. denied*, 294 N.C. 183, 241 S.E. 2d 518 (1978), this Court held that assault with a deadly weapon was not a lesser included offense of discharging a firearm into an occupied building because the latter does not involve an assault on a person.

In the case *sub judice*, each offense for which defendant was convicted included an element not common to the other. Discharging a firearm into an occupied vehicle is not essential to support an assault with a deadly weapon. An assault on a person is not an essential element of discharging a firearm into an occupied vehicle. Defendant was not placed in double jeopardy by the convictions for both offenses. He received a fair trial in which we find

No error.

Judges JOHNSON and ORR concur.